ALLEN ROWE AND WILLIAM ROWE, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed January 10, 1924.

1. Whether an infant of tender years has sufficient mental capacity and sense of moral obligation to be competent as a witness is a question for the discretion of the trial judge, and his ruling in that regard will not be disturbed by an appellate court, except in case of a manifest abuse of discretion or where the witness is admitted or rejected upon an erroneous view of a legal principle.

2. It is the duty of the trial court where an infant of tender years is offered as a witness, especially in a criminal case, to examine him and ascertain whether he has sufficient intelligence and understanding of the nature and obligation of an oath to be a competent witness, and such investigation should be carried far enough to make the infant's competency apparent.

3. When the trial judge has satisfied himself of the competency of a proffered witness of tender years, the defendant has the right to examine him further upon the same subject.

4. Contradictory statements by a witness are matters for the jury, and unless they are so egregious as to make the testimony entirely unworthy of belief, the finding of the jury based upon such testimony will not be disturbed.

5. Section 6080, Revised General Statutes of Florida, 1920, provides, "no accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf." This statute is mandatory and its violation by a prosecuting officer of the State will cause a reversal of a judgment of conviction.

6. Remarks by prosecuting officers of the State, in violation of this statute, however veiled or adroitly made, cannot be cured by the court instructing the jury to disregard them.

A Writ of Error to the Circuit Court for Nassau County; George Couper Gibbs, Judge.

Judgment reversed.

*Frank D. Brennan* and *Frank D. Upchurch,* for Plaintiffs in Error;

*Rivers Buford,* Attorney General, *Marvin C. McIntosh,* Assistant Attorney General, and *Frank Wideman,* State Attorney, for the State.

BROWNE, J.—Allen Rowe and William Rowe, jointly indicted, were convicted of murder in the first degree.

As the judgment must be reversed on other grounds, assignments of error relating to the qualifications of jurors, the appointment of bailiffs for the jury, and the refusal to permit two witnesses to testify in sur-rebuttal, need not be decided, as in all probability these questions will not arise in another trial of this cause.

On his direct examination, Hamp Thomas, a witness for the State, testified that the shooting occurred about 375 yards from his house at 2 o'clock in the afternoon; that he heard eighteen or twenty gun shots, and did not go to the scene of the shooting until about 10 o'clock that night. The State sought to elicit from him his reasons for not going to the scene of the shooting sooner. This line of testimony was objected to by the defendants and the objections overruled.

We find no error here. The questions did not in themselves show that the State was seeking to elicit improper testimony, nor were the answers improper or harmful.

We do not regard as well taken, the assignments based upon the ruling of the court as to the competency of the witness Leonard Wingate.

When this witness was called, the court announced: "Having examined this witness at a hearing before me, sitting in chambers, and the witness having also been examined by the County Judge, and both the County Judge and the Judge of the Circuit Court having reached the conclusion that he is competent to testify, the Court will make no further examination at this time as to his competency to testify. The hearing referred to by the court is the hearing on petition to admit to bail, held in Jacksonville, Florida, on September 26th, and days following, 1922."

When the court made its ruling the defendant did not ask to be allowed to exercise his right to examine the proffered witness in open court.

This court has laid down these rules governing the admission of the testimony of a person of tender years: "Whether an infant of tender years has sufficient mental capacity and sense of moral obligation to be competent as a witness is a question for the discretion of the trial judge, and his ruling in that regard will not be disturbed by an Appellate Court, except in case of a manifest abuse of discretion or where the witness is admitted or rejected upon an erroneous view of a legal principle."

"It is the duty of the trial court where an infant of tender years is offered as a witness, especially in a criminal case, to examine him and ascertain whether he has sufficient intelligence and understanding of the nature and obligation of an oath to be a competent witness, and such investigation should be carried far enough to make the infant's competency apparent." Clinton v. State, 53 Fla. 98, 43 South. Rep. 312. We do not find that there was

any "manifest abuse of the discretion of the court," in his ruling that the witness was competent, or that "the witness was admitted upon an erroneous view of a legal principle."

It is contended by the plaintiffs in error that owing to certain occurrences in connection with, and inconsistencies in the testimony of Leonard Wingate, it was not worthy of credence, and there being no other witness to the killing, without his testimony there was nothing to support the verdict of guilty.

It appears that on the night after the homicide, the boy was interrogated by County Judge Stewart, and when asked if he knew who had killed his grandfather and father, replied, "he did not" that it was "two long slender fellows with sharp noses," and then, without being asked about the Rowes, and their names not being mentioned, he voluntarily said, "It wasn't none of the Rowe boys, I know, because I know them as far as I can see them walk."

In considering this boy's testimony, the jury no doubt took into consideration the revolting circumstances of the homicide and their effect upon the boy's mind when he was interrogated a short time thereafter.

He was in the automobile with his father and grandfather when they were killed. He saw two men emerge from the side of the road, and saw them literally tear to pieces the bodies of his father and grandfather, with shots from guns and rifles; and he himself had been wounded, and pulled out of the car by the hair and told to "get away."

These circumstances were sufficient to fill him with fear and dread of the perpetrators,- and imbue him with the thought that if he told on them, a like fate would befall him. He knew both the men; he recognized them as the perpetrators of the crime, and in his dread lest they reap

vengeance on him if he told on them, he sought to shield them. His voluntarily disclaiming that the Rowes were the perpetrators of the crime, when no one accused them, and their names had not even been mentioned or suggested to him, is corroborative of his subsequent testimony implicating them, rather than a contradiction.

There were some discrepancies in his testimony, but the jury evidently did not regard them as sufficiently serious to warrant them in rejecting his account of the killing, and we cannot say that they were wrong.

The assignments relating to the conduct of the State Attorney and the Assistant State Attorney in their argument to the jury present such palpable violations of the rights of the defendants to a fair and impartial trial, and the rights guaranteed them under the Constitution and the statutes of Florida, that the judgment must be reversed.

Section 6080, Revised General Statutes of Florida, 1920, provides, "No accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf."

In his opening address, the Assistant State Attorney, Mr. McNeill, speaking of the homicide, said: "There being nothing to deny it, not even the statement of the defendants themselves." Upon objection, the court said: "Gentlement of the jury, you will not regard that portion of the argument in reference to the statements of the defendants themselves. Of course, Mr. McNeill, you realize you cannot comment on the failure of the defendants to testify." Whereupon Mr. McNeill replied, "Oh, yes. I had no intention in the world of commenting on that."

It has been held in some States that comments by counsel for the State upon the failure of a prisoner to testify, are

in violation of his constitutional rights, as well as a violation of statutes similar to ours.

In discussing such a statute, the Court of Appeals of New York State said: "If with this statute in force, the fact that he is not sworn can be used against him, and suspicion be made to assume the form and have the force of evidence, and circumstances, however slightly tending to prove guilt, be made conclusive evidence of the fact, then the individual is morally coerced, although not actually compelled to be a witness against himself. The Constitution, which protects a party accused of crime from being a witness against himself, will be practically abrogated. .

"The Legislature foresaw some of the evils and dangers that might result from the passage of this act, and did what could be done to prevent them by enacting that the neglect or refusal of the accused to testify should not create a presumption against him." Ruloff v. People, 45 N. Y. 213.

In the case of Commonwealth v. Harlow, 110 Mass. 411, the court said: "The St. of 1870, c. 393, Sec. 1, which makes defendants who are charged with crimes and offences competent witnesses, provides that their neglect or refusal to testify shall not create any presumption against them. This provision conforms to Article 12 of the Declaration of Rights, which declares that no subject shall be compelled to furnish evidence against himself. Since this class of defendants are allowed to testify if they will, there is some danger that if one exercises his right of silence, the jury will look upon it as a proper matter to weigh against him in considering the question of his guilt. It is important that courts should carefully guard his constitutional right."

It is urged by the State that because the trial judge, upon objection of the defendants, told the jury not to "re-

gard that portion of the argument in reference to the statements of the defendants themselves,'' and told counsel for the State that he could not ''comment on the failure of defendants to testify,'' the evil done by the State's counsel in commenting, in violation of the statute upon the failure of the defendants to testify, was cured.

In support of this proposition, there are cited the cases of Young v. State, 70 Fla. 211, 70 South. Rep. 19; Lampkin v. State ,70 Fla. 448, 70 South. Rep. 440; Landrum v. State, 79 Fla. 189, 84 South. Rep. 535. These cases are not applicable to the matter under consideration because they relate to alleged improper remarks by counsel, other than a violation of this statute.

The same is true of the cases of Willingham v. State, 21 Fla. 761, and Clinton v. State, 53 Fla. 98, 43 South. Rep. 312.

In none of these cases was the question of the violation of the statute which says that a prosecuting attorney shall not ''be permitted before the jury or the court to comment on the failure of the accused to testify in his own behalf,'' involved.

The Willingham case, *supra,* was decided prior to the enactment of the statute under consideration, and the language used in that decision cannot be construed as applicable to it, but it is worthy of consideration that this court cited without disapproval the decisions of several courts holding that a violation of a law on this subject by the prosecuting officer of the State cannot be remedied or cured by any mere instruction, and that the only complete remedy if the defendant is convicted is to give him a new trial. State v. Balch, 31 Kan. 465, 2 Pac. Rep. 609; Long v. State, 56 Ind. 182.

The discussion and the citation of authorities in the Willingham case differentiated between improper argu-

ment by counsel for State and violation of a statute, and indicates what the decision of this court would have been, had the question now presented been involved in that case.

The case of Carr v. State, 84 Fla. 162, 93 South. Rep. 879, cited by the State, is not in point, as the accused testified in his own behalf, and "denied taking the money alleged to have been stolen, and denied having a roll of money in Tampa, as testified by witnesses for the State,"

The statute is not intended to protect an accused person who testifies in his own behalf from proper comment by the State's counsel on discrepancies in his testimony.

The fact that the trial judge admonished the county solicitor not to "comment on the defendant's failure to testify," only shows that he was particularly careful to see that there was no semblance of improper conduct by the public prosecutor in the trial of the cause.

In the opening argument in Brazill v. State, 33 Tex. Cr. Rep. 333 ,26 S. W. Rep. 723, counsel for the State said: "We have proved where the defendant was on the 29th, 30th and 31st of January, 1893, and the 1st, 2nd, 3rd and 4th of February, 1893, and we have shown by the witness Forrester that the defendant was present and committed this burglary;" and then, facing the defendant, said: "Now, where does he say he was if he was not there?" On objection being made, the court admonished the counsel not to refer to that, and told the jury not to consider it. It seems from this that the trial judge understood the counsel to be referring to that fact that defendant had the opportunity to testify with regard to this matter and had not availed of the privilege. We think the remarks bear this construction, and under repeated decisions the allusion is cause for reversal; and in fact that the court rebuked them, and withdrew them from the consideration of the jury, does not cure the vice."

The decisions in the Texas cases are upon a statute similar to ours. " 'Hereafter any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented upon by counsel in the cause.' "

In the case of Jordan v. State, 29 Tex. App. 595, 16 S. W. Rep. 543, the county attorney in his opening argument said: " 'The law allows the defendant to testify for himself, but if he fails to do so the law says that I shall not comment upon his failure to testify in his own behalf; but it does not preclude me from commenting upon the failure of the defendant to put Florence Hamilton on the stand as a witness.' "

In passing upon this, the Supreme Court of Texas said: "By the terms of this statute any and all allusions by counsel to a defendant's failure to testify in his own behalf is strictly prohibited. When a defendant does not testify in his own behalf this statute enjoins absolute silence on the subject in so far as the argument is concerned."

In Hunt v. State, 28 Tex. App. 149, 12 S. W. Rep. 737, the court held, with relation to a statute similar to ours, that its effect "is to absolutely inhibit allusion by counsel to the failure of the accused to testify in his own behalf; and that the inhibition is so far mandatory that its violation by a prosecuting counsel will work the reversal of a conviction, although he may have been provoked thereto by the argument of counsel for the defense, and although the court may have sought, by admonition and by instructions to the jury, to control the effect of the same."

In the case of Reddick v. State, 72 Miss. 1008, 16 South. Rep. 490, there was testimony of an alleged admission made by the prisoner to a State's witness. In the opening argu-

ment to the jury, the State Attorney, referring to this, said: "and he has not denied it." When interrupted by the prisoner's counsel, suggesting the impropriety of this comment, he corrected himself and said: "It has not been denied." On hearing of the motion for a new trial, the counsel for the State testified, "that it was not his intention to refer to the fact that the defendant failed to take the stand in his own behalf."

The Supreme Court of Mississippi held, "His intention was immaterial, if, in fact, he used such language as could be reasonably construed to be a comment, and an unfriendly one, too, upon the failure of the accused to testify. The court below so construed the remark. We so construe it, and the jury, without doubt, so understood it. It is true that, immediately on the prisoner's counsel excepting to the language of the counsel for the State, the court instructed the jury that the district attorney was prohibited from commenting on the defendant's failure to take the stand on his own behalf, and that the jury must not consider any such comment. But this action of the court could not, and did not, undo the wrong already done. The statute forbids absolutely any comment on the failure of the accused to testify, and it is the right of every person charged with crime to insist that he enjoy this statutory immunity from criticism by hostile counsel, and the disregard of this plain statute, and the decision of this court upon it, by the State's own counsel, must reverse the judgment appealed from in this case." See also case of Sanders v. State, 73 Miss. 444, 18 South. Rep. 541, where the same rule is announced.

In Showalter v. State, 84 Ind. 562, the State Attorney alluded to the fact that the defendant had not testified, when he was stopped by the court who "informed the jury

that they could not take the fact that the defendant did not testify into consideration.''

In passing upon this, the Supreme Court said: ''We need not comment on the language complained of in this case, further than to say that it constituted such an error of law, we think, that 'the fact that defendant did not testify could not be taken into consideration.' '' See also Long v. State, 56 Ind. 182.

In the case of Angelo v. People, 96 Ill. 209, the court said: ''It is to be regretted that counsel who assisted the prosecuting attorney referred, as he did in his argument to the jury, to the fact that plaintiff in error was not placed on the stand as a witness, as one of the reasons why he should be convicted. It is true that when stopped by the court, he said it was inadvertently done, and the jury were directed by the court to disregard that portion of his argument. Notwithstanding what he said, and the direction of the court to disregard it, who can know what effect it may have had on the jury in forming their verdict? Such comments are prohibited by the statute, and it is strange that any attorney should so far forget the rights of the accused, and his professional duty, for a moment, even in the heat of discussion; but he said it was inadvertent, and we are loath to believe that any attorney would intentionally act so unfairly and unprofessionally. We cannot conceive that any member of the bar could deliberately seek by such means to wrongfully procure a conviction and the execution of a fellow being, when his highest professional duty to his client only requires him to see that there is a fair trial according to the law and the evidence. Where such things are done, whether intentionally or inadvertently, it may make an impression on the minds of the jury that nothing can remove. And who can say that this inadvertence may not have produced the verdict of guilty? We think plaintiff in error has not had a fair trial, and the

judgment of the court below must be reversed and the cause remanded.''

In the case of Quinn v. People, 123 Ill. 333, 15 N. E. Rep. 46, the Supreme Court in passing upon the violation of a statute such as ours, said: ''It is true the court, upon the objection being made, stopped counsel, and told the jury that his remarks were improper; and this, together with the claim that the remarks were unthoughtedly made in the heat of discussion, is all that is urged in palliation of the positive violation of the statute. How much did it avail for the court to tell the jury that the remarks of counsel were improper  His words had found a lodgment in the minds of the jury, spent their force and subserved the purpose for which they were uttered, and it were idle to talk about removing their effect upon the jury by a mere declaration from the court that they were improper. As well might one attempt to brush off with the hand a stain of ink from a piece of white linen. One, in the very nature of things, is just as impossible as the other.''

In introducing its discussion of this question the court said: ''So far no serious difficulty has been encountered in the consideration of this case. It remains, however, to consider an objection of a more serious character. It is claimed by the prisoner that in the conduct of the trial, his rights, under the Constitution and laws of the State, were violated and disregarded. It is clear that whenever a trial is so conducted as to deprive the accused of any substantial right, he has not had a fair trial, within the meaning of the Constitution, and a trial which is not only violative of common right, but is contrary to the spirit and genius of our free institutions. It is also a reproach to the courts that permit it, and a blot upon the jurisprudence of the State.''

In Missouri it is held that reference by the prosecuting attorney to the failure of the defendant to testify, is re-

versible error, though the court rebuked the attorney, and the attorney apologized at the time." State v. Brownfield, 15 Mo. App. 593.

Up to this point we have dealt only with instances where the trial judge rebuked the offending State Attorney, and instructed the jury not to consider the failure of the defendants to testify in their own behalf, from which it appears that the violation by the prosecuting officer of a statute such as ours cannot be cured by the court instructing the jury to disregard his comment.

Both reason and the right to a fair and impartial trial attest to the soundness of these decisions.

We doubt if even the most ardent prosecutor would contend that comment by the prosecuting officer in violation of law, upon the failure of an accused to testify in his own behalf, is not reversible error, when the trial judge upon objection by the defendant fails to rebuke the offending officer, and instruct the jury that they must disregard that fact.

One of the assignments of error presents that question.

In his closing argument, the State Attorney said: "that the jury must reach its verdict from the evidence, that the evidence showed five eye witnesses to the homicide; two were dead; *two were the defendants;* and the *fifth,* Leonard Wingate, has testified in this trial. Who killed Mr. W. H. Wingate? If you believe beyond a reasonable doubt that some one other than these defendants killed Mr. Wingate, it will help to decide the guilt or innocence of William Rowe and Allen Rowe.' This was objected to by the defendant, but in ruling upon the objection, the court merely said, "The court will instruct the jury at the proper time as to the law of the case."

This statement by the State Attorney, to the effect that there were "five eye witnesses to the homicide; two were

dead, two were the defendants; and the fifth, Leonard
Wingate, has testified in this trial,'' called to the attention
of the jury that *the two defendants had not testified.*

In this instance the court took no action, but merely
said, he would "instruct the jury at the proper time as to
the law of the case.'' Even if the trial judge had stopped
the State Attorney and told the jury not to consider the
failure of the defendants to testify, it would not have cured
the error, and although he said that he would "instruct the
jury at the proper time as to the law of the case,'' and we
find nothing in the record to show that he did so.

Not once nor twice only, but three times was the statute
violated.

In his closing argument the State Attorney said: ''Un-
der the law the State Attorney cannot comment on the
failure of the defendants to take the stand, therefore he
would have nothing further to say about that.'' This was
a clear violation of the statute which the court permitted
by its silence.

The Attorney General in his brief seeks to justify this
language as a mere "statement of the law, not a comment
or deduction on the failure of the defendants to testify.''
It might better be designated as did the court in State v.
Moxley, 102 Mo. 374, 14 S. W. Rep. 969, as "an adroit and
insinuating attempt indirectly to accomplish what could
not have been accomplished by a direct statement. The
statute does not permit such evasions of its manifest
purpose.''

A somewhat similar statement by the county attorney in
arguing to the jury appears in State v. Holmes, 65 Minn.
230, 68 N. W. Rep. 11, where the objectional remark ad-
dressed to one of the defendant's attorneys, was, " 'You
know where the cashier is, and where he has been, and you

know the laws of this State permitted the defendant to remain silent, and it would be improper and cowardly for me to comment upon it, and it is not my intention to evade the spirit or the letter of the law.'"

On passing upon this the Supreme Court said: "G. S. 1894, Sec. 5658, provides that a person charged with crime shall at his request, but not otherwise, be deemed a competent witness; nor shall the neglect or refusal to testify create any presumption against the defendant; nor shall such neglect be alluded to or commented upon by the prosecuting attorney or by the court. We are not particularly impressed with the wisdom of this last provision, for every intelligent juror knows that a defendant may testify in his own behalf, and, if he neglects or refuses to do so, every juror will draw his own inferences from the fact, unfavorable to the defendant. But the law is the declared legislative policy, and we are bound to assume that a violation of the statute is prejudicial error."

This is the third time at this term of the court that we have been required to call attention to improper conduct by prosecuting officers of the State in their arguments to juries. See Washington v. State, and Akin v. State, decided at this term.

In the Akin case, *supra,* we said: The law seems to be well settled that it is the duty of the trial judge, whether requested or not, to check improper remarks of counsel to the jury, and to seek by proper instructions to the jury to remove any prejudicial effect they may be calculated to have against the opposite party, a verdict will not be set aside by an appellate court because of such remarks or because of any omission of the judge to perform his duty in the matter, unless objection be made at the time of their utterances. This rule is subject to the exception that if the improper remarks are of such character that neither re-

buke nor retraction may entirely destroy their sinister influence, in which event a new trial should be awarded regardless of the want of objection or exception.

We hold that calling the attention of the jury, by the prosecuting officer of the State, to the failure of the accused to testify in his own behalf, it matters not how adroitly he may attempt to evade the command of the statute, or how innocently it may be done, comes within the exception and deprives the defendant of the protection the statute was intended to secure, and of his constitutional right to a fair and impartial trial.

For the violations of the statute by the prosecuting officers of the State, as pointed out herein, and for that only, the judgment is reversed, and a new trial granted.

TAYLOR, C. J., AND WHITFIELD, ELLIS, WEST AND TERRELL, J. J., concur.