701 So.2d 1258 (1997)
Eddie James WALKER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1896.
District Court of Appeal of Florida, Fifth District.
December 5, 1997.
James B. Gibson, Public Defender, and Dan D. Hallenberg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING EN BANC
HARRIS, Judge.
We grant the motion for en banc review and substitute the following opinion.
Eddie James Walker on multiple occasions delivered cocaine to undercover police agents. On one occasion, it was a direct sale to undercover officers. On another occasion, the cocaine was delivered to an undercover agent as payment for the alteration of the V.I.N. number and the acquisition of a new title on Walker's car. Many of Walker's conversations with the agents concerning this transaction are recorded on tape. After Walker delivered, on separate occasions, a total of 156 grams of cocaine, he was arrested and charged with one count of trafficking in and two counts of delivery of cocaine.
Walker pled not guilty and raised the affirmative defense of entrapment. This trial strategy bears certain consequences. As our supreme court stated in Herrera v. State, 594 So.2d 275, 277-78 (Fla.1992), in upholding the *1259 constitutionality of section 777.201(2), Florida Statutes, which placed the burden of proof on the defendant to prove entrapment:
Entrapment is an affirmative defense and, as such, is in the nature of an avoidance of the charges. [Footnote and cite omitted]. As this court has previously stated: "An `affirmative defense' is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question." [Citation omitted]. In considering affirmative defenses the United States Supreme Court has held that "it is normally `within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless `it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"
It can therefore be seen from the foregoing and from the standard jury instructions (Fla. Std. Jury Instr. (Crim.) [p. 39a]), that Walker had the burden of establishing his affirmative defense. But even though Walker neither took the stand nor presented any evidence in his defense, his attorney urged the jury to acquit on the basis of entrapment. The prosecutor, in responding to defense counsel, pointed out that it was Walker's burden to establish his defense of entrapment and stated, "The law also says that the defendant must prove to you, not the State, but the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as the result of entrapment. The defendant in order to claim entrapment had to say `if it wasn't for the action of the government, I would not have even thought or tried to do what I did.'" While it is not claimed on appeal that the prosecutor's statement is a misstatement of the law, it is urged that by referring to the defendant himself, rather than to the defense, the State improperly commented on the defendant's right to remain silent.
Does the defendant's Fifth Amendment right not to testify permit him to remain silent and put on no evidence and yet claim the defense of entrapment through his counsel's closing argument without a response from the State that correctly points out defendant's failure to meet his burden?[1] Certainly the defendant need not take the stand if he can produce sufficient evidence of the affirmative defense through the testimony of other witnesses. But he did not in this case. While the testimony of the State's witnesses and the transcripts of the conversations with Walker regarding the transaction show that the State wanted to be paid in cocaine, such evidence does not suggest that Walker did not have a predisposition to deal in drugs. It is not entrapment for the State to provide an opportunity for the defendant to trade drugs for services. It is entrapment only if the defendant would not have dealt in drugs but for the State's inducement. It is suggested that even if the State had the right to respond to defense counsel's closing argument, the response should have been couched in more general terms without referring to the defendant himself so as to call attention to the defendant's not taking the stand. Certainly the prosecutor could have been more circumspect in her response and used the term "defense" instead of "defendant" and suggested that the defense had the responsibility to "put on evidence" instead of "to say."[2] But the upshot is the same; the *1260 jury's attention would still have been directed to the fact that the defendant had shown no evidence of entrapment. Further, the prosecutor's statement is consistent with the jury charge given by the court and to which no objection was made:
It is not entrapment if Eddie James Walker had the predisposition to commit the crime of trafficking in 28 grams or more of cocaine or delivery of cocaine. Eddie James Walker had the predisposition if before any law officer persuaded, induced, or lured Eddie James Walker, he had a readiness or a willingness to commit trafficking in 28 grams or more of cocaine or delivery of cocaine if the opportunity presented itself.
* * * * * *
On the issue of entrapment, the defendant must prove to you by a preponderance of evidence that his criminal conduct occurred as a result of entrapment. (Emphasis added).
The prosecutor's argument, although in the vernacular, is totally consistent with the instructions given by the court. By using the term "the defendant must say," the prosecutor was not indicating to the jury that the defendant was personally required to take the stand and testify in order for the affirmative defense to be established. The statement was intended to merely point out that the defendant, in order to claim the defense of entrapment, had to "say" through the testimony of someone that he would not have trafficked in cocaine but for the actions of the State. The real issue here is whether it is as improper to point out to the jury that the defendant has failed to present evidence as it relates to an affirmative defense as it is in the case of the charged offense. We think not. To make this type statement in the case of a charged offense would be inconsistent with the defendant's presumption of innocence. However, this presumption does not come into play when the issue is the affirmative defense. In the case of an affirmative defense, the defendant admits violating the law as charged but seeks to be excused from such violation because of the State's misconduct. Here, he has the burden unassisted by any presumption.
A defendant cannot argue "I didn't deliver the cocaine but if I did, I was entrapped" and hope to retain any credibility with the jury. Defense counsel was well aware of that in this case. In closing argument, defense counsel admitted that his client committed the underlying charges:
He engaged in such conduct as the direct result of such inducement or encouragement... Obviously, this wouldn't have happened except for Webster claiming he was going to change the V.I.N. numbers and asking him to pay him in dope.
We find that the prosecutor's argument was consistent with the law.
And even if the prosecutor's remarks were erroneous, it is our obligation to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980-81, 76 L.Ed.2d 96 (1983). In that regard, it should be noted that the prosecutor's comment did not refer to the defendant's failure to address the charged offenses. Certainly the State had the burden of proving the charged offenses beyond and to the exclusion of a reasonable doubt. The jury's verdict, as well as defense counsel's admission during closing argument, indicates that the State met that burden. The questionable comment was made only in response to defense counsel's argument on the affirmative defense. Since there is no legitimate argument that the defendant met his burden of establishing the defense of entrapment, it cannot be said that his defense was prejudiced by the prosecutor's comment. But did the jury take the prosecutor's comment out of context and improperly apply it to the State's obligation to prove the charged offenses? Since defense counsel candidly admitted the underlying offenses, this should not even be a consideration.
*1261 The harmless error rule applies even in cases relating to comments concerning the defendant's right to remain silent. State v. Marshall, 476 So.2d 150 (Fla.1985); State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The Marshall court established our responsibility on review to determine "absent the prosecutor's allusion to the failure of the defense to proffer evidence ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" 476 So.2d at 152. DiGuilio explains our obligation in considering the harmless error test as determining whether the State proved beyond a reasonable doubt that the error complained of did not contribute to the conviction.
Even had the challenged statement not been made, the jury would have still faced overwhelming evidence, including tape recordings of the defendant's active participation in conversations relating to illegal transactions, that the defendant made multiple deliveries of cocaine to undercover police officers. The strength of this evidence is not diminished by the prosecutor's comment in response to defense counsel's argument, which had little, if any, evidentiary support. We find any error to be harmless.
AFFIRMED.
GRIFFIN, C.J., and DAUKSCH, COBB, W. SHARP and PETERSON, JJ., concur.
ANTOON, J., dissents, with opinion in which GOSHORN and THOMPSON, JJ., concur.
ANTOON, Judge, dissenting.
I respectfully dissent. Apparently, the majority agrees with the prosecutor's statement that the defendant was required to waive his constitutional right to remain silent and testify in order to prevail on the defense of entrapment. The majority concludes that the raising of an affirmative defense constitutes a green light for the prosecutor to tell the jury that, in reaching its verdict, it may consider the defendant's election to invoke his constitutional right to remain silent. Such a ruling is indeed a landmark decision.
This case involves a reverse sting operation. The operation was set in motion by a confidential informant (C.I.), who initiated contact with the defendant under the supervision of the Orange County sheriff's department. After arranging controlled buys of cocaine, the C.I. advised the supervising agent that the defendant was looking for someone who could alter the VIN number on his car and obtain a new car title. Again, the sheriff's office initiated contact with the defendant by arranging for an undercover agent to contact the defendant regarding the VIN number and car title. The undercover agent and the defendant discussed the work to be done and agreed to an exchange of crack cocaine as payment. Over the next two weeks there were many discussions regarding the work done on the car, and the quantity and delivery of cocaine. Upon making the last delivery of cocaine to the agent, the defendant was arrested.
At trial, the defendant did not testify, and he presented no evidence on his own behalf. However, in closing, relying on the testimony presented during direct and cross-examination of the state's witnesses, defense counsel argued the defense of entrapment. Specifically, he argued that the defendant was not predisposed to commit the crimes and would not have done so but for the conduct of the law enforcement officers.
In presenting this argument, defense counsel emphasized the defense's view that the C.I. was not reliable because he was a convicted felon. Counsel also argued that the C.I. had a motive to lure the defendant into delivering cocaine because the C.I. was paid by the sheriff's department when he procured a purchase. Compensation was based on the subjective assessment of the supervising agent, and in deciding the fee the supervisor considered the amount of cocaine procured through the efforts of the C.I. In this case, the C.I. was paid $500. Defense counsel argued further that the C.I. may have come up with the idea of exchanging cocaine for work on the defendant's car in order to receive compensation from the sheriff's department. Defense counsel also pointed out that the initial conversation between the undercover agent and the defendant was not recorded even though the sheriff's department had the equipment to do so. He stressed that when the defendant attempted *1262 to make a cash payment for the car the undercover agent "pushed" for payment by cocaine instead. Based on the testimony of the state's witnesses, defense counsel argued that the sheriff's department wanted the defendant to deliver as much cocaine as possible in an effort to obtain a trafficking conviction.
In response to this argument, the prosecutor commented on the defendant's failure to testify in his own defense:
The defendant in order to claim entrapment had to say `if it wasn't for the action of the government, I would not have even thought or tried to do what I did.'
(Emphasis added.)[1] Defense counsel immediately objected and moved for a mistrial arguing that this statement constituted an improper comment on the defendant's right to remain silent. The motion for mistrial, as well as a later motion for new trial based on this comment, were denied by the trial court.
The prohibition against prosecutorial comment on a defendant's decision not to testify is basic. Every criminal lawyer understands that prosecutorial comments on the defendant's exercise of the right to remain silent are barred. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh'g denied, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965); Rowe v. State, 87 Fla. 17, 98 So. 613 (1924). This prohibition is, of course, founded on the provisions against self-incrimination contained in the Fifth Amendment to the United States Constitution, as well as article I, section 9 of the Florida Constitution. Historically, courts have zealously enforced this prohibition so that defendants receive the full measure of their constitutional rights. Florida's courts have guarded against juries considering even the slightest suggestion that a defendant's failure to take the stand in his own behalf is evidence of guilt. See Way v. State, 67 So.2d 321 (Fla.1953). See also State v. Kinchen, 490 So.2d 21 (Fla.1985) (Ehrlich, J., concurring in part and dissenting in part).
In determining whether a prosecutor's comment regarding a defendant's failure to testify requires a mistrial, Florida courts have adopted the "fairly susceptible" test. David v. State, 369 So.2d 943 (Fla.1979). Under this test,
[a]ny comment which is "fairly susceptible" of being interpreted by the jury as referring to a criminal defendant's failure to testify constitutes reversible error....
Id. at 944. See also Kinchen. This test is frequently applied to cases where the prosecutor's remarks are subtle inferences that the defendant has the burden to come forward and testify in his own behalf. However, there was nothing subtle about the comments in this case. Instead, the prosecutor directly referred to the defendant's failure to testify and suggested that, as a result of this failure, the jury must disregard his only proffered defense. Certainly this comment satisfies the fairly susceptible standard.
I agree with the majority that the prosecutor's comment on the defendant's right to remain silent is subject to the harmless error analysis set forth in State v. Marshall, 476 So.2d 150 (Fla.1985). However, in order to establish that a prosecutor's improper comment was harmless, the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict...." State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). In other words, there must exist no reasonable possibility that the improper comment contributed to the defendant's conviction. Id. The supreme court further explained the severity of the test as follows:
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is *1263 whether there is a reasonable possibility that the error affected the verdict.
State v. DiGuilio, 491 So.2d at 1139. This language serves as a reminder of just how rigorously the harmless error standard must be applied. In my view, the state has failed to meet its burden in the instant case. Although there was sufficient evidence upon which the jury could have concluded that the defendant was guilty, the prosecutor's comment may well have been construed by the jury to mean that the defendant was not entitled to prevail upon the only defense he raised since he had decided to remain silent. After all, that is precisely what the prosecutor said.
This case serves as an example of why Justice Shaw, in DiGuilio, wrote:
It is clear that comments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial by influencing the jury verdict....
State v. DiGuilio, 491 So.2d at 1136. This language is an admonition to prosecutors that the prohibition against comments on the defendant's right to remain silent remains intact and that DiGuilio does not provide a safe harbor for prosecutors who unnecessarily take the risk of commenting on the defendant's right to remain silent. This is not the exceptional case the harmless error rule was intended to address. Therefore, I would reverse.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] See United States v. Nasta, 398 F.2d 283 (2nd Cir. 1968), which held that the government's closing argument to the effect that there was no evidence from the witness chair that the defendant had not previously dealt in counterfeit money, and no testimony or evidence to contradict government's witnesses, and no evidence that the government persuaded, or in any way induced, defendant to make sales of counterfeit money, amounted to no more than a general comment on the posture of the case with respect to defense counsel's argument as to entrapment, and the government's remark could not be considered to have constituted improper comment on defendant's failure to testify.
[2] In Priestly v. State, 450 So.2d 289 (Fla. 4th DCA 1984), the court held that the prosecutor's remarks during closing argument that those defendants raising the defense of entrapment would "have to show or has to be shown through evidence to youin other words, through the State's presentation of evidence to you that they were entrapped" merely called the jury's attention to the rule that the defense must prove the affirmative defense of entrapment unless the State's case itself shows entrapment and was therefore proper and not violative of the defendant's right to remain silent.
[1] The proceedings, especially during closing argument, had become contentious in spite of the trial court's continuous efforts to maintain civility. I have no reason to believe that, but for the heat of battle and a temporary lapse of concentration, the prosecutor would not have uttered these words.