RICHARD LESTER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—DYING DECLARATIONS—IMPEACHMENT OF—ADMISSIBILITY OF THREATS—PREJUDICIAL REMARKS BY JUDGE—CHAPTER 4400 LAWS IS CONSTITUTIONAL—EXCEPTING TO REFUSALS TO GIVE REQUESTED INSTRUCTIONS.

1. Dying declarations in cases of homicide form an exception to the rule against the admissibility of heresay evidence. To render such declarations admissible the judge must be fully satisfied that the deceased declarent, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope whatever of recovery. This absence of all hope of recovery, and appreciation by the declarent of his speedy and inevitable death is a preliminary foundation that must always be laid to make such declarations admissible. It is a mixed question of law and fact for the judge to decide, before permitting the introduction of the declaration itself. The judge hears all pertinent evidence that exhibits the state of mind of the deceased at the time of making the declaration, settles any conflicts in such testimony and, if fully satisfied that it was made under such circumstances as render it legally admissible, it should be admitted. It is not necessary that such preliminary test should consist of express utterances, but it may be gathered from any circumstance or from all the circumstances of the case.

2. While the dying declarations of the deceased are admissible in evidence in homicide cases, when shown to have been made under proper circumstances, and, when admitted, are entitled to their appropriate weight as evidence, yet they are open to observation and impeachment in any of the modes by which the evidence of the deceased could have been impeached had he been alive and testifying under oath. It may be impeached by showing that the general reputation of the deceased for truth and veracity in the community in which he lived was bad, and that he could not be believed under oath.

3. Great care should always be observed by the trial judge to avoid the use of any remark in the hearing of the jury that is capable, directly or indirectly, expressly, inferentially or by innuendo, of conveying any intimation as to what view he takes of the case, or that intimates his opinion as to the weight, character, or credibility of any evidence adduced.

4. Where there is evidence for the defendant in a murder trial tending to show that he took the life of the deceased in self-defense while the latter was making a murderous assault upon him, previous threats made by the deceased of a determination to kill the defendant become admissible, as they tend to corroborate the fact of the assault by the deceased.

5. Chapter 4400 laws, approved May 30th, 1895, entitled "An act to amend section 2908 of Revised Statutes of Florida, relating to sworn statement of accused," is not unconstitutional because of any failure of its title to express its subject.

6. Under the provisions of section 1092 Revised Statutes, only such charges *as were actually given* can be *excepted to* through the medium of a motion for a new trial. *Refusals to give* requested instructions can not be *excepted to* in this manner, but *exceptions to such refusals* must be taken and noted *at the time of such refusals,* otherwise they can not be considered on writ of error.

Writ of Error to the Circuit Court for Gadsden county.

The facts in the case are stated in the opinion of the court.

*Ellis & Love*, for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

TAYLOR, J.:

The plaintiff in error was indicted and tried at the Fall term, 1895, of the Circuit Court of Gadsden county for the crime of murder, and was convicted of murder in the third degree, and sentenced to twenty years' imprisonment in the penetentiary, and comes here for relief on writ of error.

The first, second, third and sixth assignments of error question the propriety of the admission in evidence of the dying declaration of the deceased. The defendant contends that the evidence adduced by the State as the groundwork for the admission of the *ante mortem* statement of the deceased did not sufficiently show that the deceased had lost all expectation or hope of recovery before making the statements admitted in evidence, as to make them legally admissible. This contention can not be sustained. Dying declarations in cases of homicide form an exception to the rule against the admissibility of hearsay evidence. The law regards the declarent, when in the presence of imminent and inevitable death, as being under as solemn an inspiration to tell the truth as though he were pledged thereto by oath. To render such declaration admissible, however, the court must be satisfied that the deceased declarent, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope whatever of recovery. This absence of all hope of recovery, and appreciation by the declarent of his speedy and inevitable death, is a preliminary foundation that must always be laid to

make such declarations admissible. It is a mixed question of law and fact for the court to decide before permitting the introduction of the declarations themselves. The judge hears all pertinent evidence that exhibits the state of mind of the deceased at the time of making his assertions, as to whether he appreciated his near and inevitable approach to death, and as to whether he was without any hope of recovery, and if satisfied by such evidence that the declaration was made under such circumstances as makes it legally admissible, it should be admitted. Should there be conflict in the evidence touching such preliminary test for the admission of such declaration, it is the judge's duty to weigh and settle it. It is not necessary that the evidence upon such preliminary test should consist of express utterances of the deceased to the effect that he knew he was going to die, or could not live, or would never recover. It may be gathered from any circumstance or from all the circumstances of the case, and is sufficient if the evidence upon such test question fully satisfies the judge that the deceased knew and appreciated his condition as being that of an approach to certain and immediate death. 1 Roscoe's Criminal Evidence (8th ed.),. p. 53 *et seq.;* State vs. Nash and Reduct, 7 Iowa, 347; Dixon vs. State, 13 Fla. 636; Roten and Thompson vs. State, 31 Fla. 514, 12 South. Rep. 910; 1 Greenleaf on Evidence (15th ed.), secs. 156 to 162 inclusive; People vs. Gray, 61 Cal. 164, S. C. 44 Am. Rep. 549. These principles were fully observed and acted upon in this case. There was some slight conflict in the evidence adduced as to the state of the deceased's mind when making the declarations admitted in proof, but we think the evi-

dence was sufficient to show that he was entirely without hope of recovery, and fully impressed with the belief that his death was imminent and inevitable; and that the dying declarations were not erroneously admitted.

At the trial, after the defendant had introduced testimony to the effect that the defendant had given the deceased the gun-shot wound of which he died while the deceased was making efforts, in the defendant's 'yard, to shoot the latter with a pistol, the defendant introduced one Frank Baker who testified "that he heard the deceased say, on the Sunday before he was shot, that he and the defendant had in a sort of manner settled the fuss that they had in Mrs. Shepard's oat field, before Justice Clark, but that it would not be decided until one of them was killed." On the State Attorney's motion the judge struck this testimony out, and refused to admit it, and this ruling constitutes the fourth assignment of error. In this ruling the court erred. It tended to show the deceased to be a man of desperate character, determined upon killing the defendant or being killed by him before their previous quarrel could be characterized as being settled. It tended to corroborate the evidence adduced prior thereto on behalf of the defendant to the effect that the deceased was shot by the defendant while he was in the act of endeavoring to carry out the threat implied in the excluded testimony. Garner vs. State, 28 Fla. 113; State vs. Evans, 33 W. Va. 417, 10 S. E. Rep. 792; Schoolcraft vs. People, 117 Ill. 271, 7 N. E. Rep. 649.

After the State had concluded the introduction of its evidence as to the state of the deceased's mind when making his dying declarations, preliminary to the in-

troduction of such declarations, the judge inquired of
counsel for the defendant whether they desired to of-
fer any testimony touching the condition of the de-
ceased at the time the offered declarations were made,
to which the defendant's counsel replied that they did
not wish to introduce any. Thereupon the judge ad-
mitted the dying declarations of the deceased in evi-
dence. After this, and after the State had closed its
testimony in chief, and after the defendant had intro-
duced considerable evidence to maintain his claim of
self-defense, the defendant's counsel, after having a
witness sworn for the defense, stated to the judge that
he now proposed to offer the testimony of certain wit-
nesses as to the condition of the mind of the deceased
at the time his dying declarations were made, after
which he would move to strike out the said dying de-
clarations. To which proposition the judge remarked
in reply as follows: ''It is rather late to offer such
testimony now, but I presume the gentlemen offer it
for the benefit of a higher court, as I can assure him
now that my decision as to the admission of these dy-
ing declarations would not be changed. However, I
will admit the testimony, so that the defendant can
get the benefit of an exception.'' To which remarks
exception was taken, and it is assigned as the fifth
error. As there is no probability that the basis of this
assignment will again arise upon another trial, it be-
comes unnecessary for us to decide whether the re-
marks made would be cause for reversal, but great
care should always be observed by the judge to avoid
the use of any remark in the hearing of the jury that
is capable directly or indirectly, expressly, inferen-
tially or by innuendo, of conveying any intimation as
to what view he takes of the case, or that intimates

his opinion as to the weight, character or credibility of any evidence adduced. All matters of fact, and all testimony adduced, should be left to the deliberate, independent, voluntary and unbiased judgment of the jury, wholly uninfluenced by any instruction, remarks or intimation, either in express terms or by innuendo from the judge, from which his view of such matters may be discerned. Any other course deprives the accused of his right to trial by jury, and is erroneous. State vs. Ah Tong. 7 Nev. 148; 1 Thompson on Trials, sec. 219, and citations.

At the trial the defendant offered to make his statement under oath, but the judge ruled that if he took the stand at all he must take it as a witness subject to cross-examination. To which ruling exception was taken, and it is assigned as the seventh error. The contention of the defendant is, that under section 2908 of the Revised Statutes he had the right to make a statement under oath of the matters of his defense, without being subjected to cross-examination. That Chapter 4400 laws of Florida, approved May 30th, 1895, entitled "an act to amend section 2908 of Revised Statutes of Florida, relating to sworn statement of accused," is unconstitutional, that provides that in all criminal prosecutions the accused may at his option be sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses, etc. That it violates section 16 of Article III of the State Constitution, requiring the sole subject of each law to be briefly expressed in its title. There is no merit in this contention. The *subject* of section 2908 of the Revised Statutes is the "sworn statement of the accused." The subject of the amendatory act, Chapter 4400 is also "the sworn statement of the ac-

cused;" and such amendatory act, by its title, not only asserts that it is designed to *amend* a section of the Revised Statutes, but accurately, and with ample fullness, states what the subject of the section to be amended is, which subject is fully expressive also of the matter to be dealt with by the amendatory act. Because the sworn statement of the accused is drawn out of him, by the terms of the amendatory act, through interrogation, as in the case of other witnesses, does not make the term "sworn statement" any the less expressive of the testimony that he gives in response to such interrogation. The Borrowdale, 39 Fed. Rep. 376; State *ex rel.* vs. Algood, 87 Tenn. 163, 10 S. W. Rep. 310.

The refusal of the judge to give instructions numbered 1, 2, 3, 4 and 7 constitutes the eighth, ninth, tenth, eleventh and twelfth assignments of error. The only attempt at any exception to the refusal of the judge to give these instructions was by making the ruling one of the grounds of the motion for new trial. In Shepard vs. State, 36 Fla. 374, 18 South. Rep. 773, we held that under the provisions of section 1092 Revised Statutes only such charges *as were actually* given and deemed to be erroneous could be excepted to through the medium of a motion for new trial. That refusals to give requested instructions could not be *excepted to* in this manner, but that *exceptions to such refusals* had to be taken and noted *at the time of such refusals;* otherwise, such exceptions could not be considered here on writ of error. That this is the correct interpretation of the statute, there is no room for doubt, and, adhering to it, we can not consider the last mentioned assignments of error.

The thirteenth and last assignment of error insisted

upon here is the refusal of the judge to give the following instruction at defendant's request: "You have a right, in considering the dying declarations of the deceased, to consider his reputation for truth and veracity." As the refusal to give this instruction was properly excepted to, as appears from the bill of exceptions, it is open to us for consideration. The judge erred in its refusal. The testimony of several witnesses had been admitted in evidence on behalf of the defense to the effect that the deceased was a person of bad reputation in the community in which he lived for truth and veracity, and that he could not be believed on oath, and that he was of turbulent and desperate disposition. While the dying declarations of the deceased are admissible in evidence in cases of homicide, when shown to have been made under proper circumstances, and, when admitted, are entitled to their appropriate weight as evidence, yet they are open to observation and impeachment in any of the modes by which the evidence of the deceased could have been impeached had he been alive and testifying under oath. 1 Roscoe's Criminal Evidence (8th ed.), p. 63; Wharton's Criminal Evidence (9th ed.), sec. 302; 3 Russell on Crimes (9th ed.), p. 271; Donnelly vs. State, 26 N. J. L. 463 and 601; People vs. Knapp, 1 Edmonds' Sel. Cas. (N. Y.) 177; McPherson vs. State, 9 Yerger, 279; Nesbit vs. State, 43 Ga. 238.

For the errors found the judgment of the court below is reversed and a new trial ordered.