CHARLES KELLEY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed March 1, 1920.

1. Where C and R are jointly charged in an indictment containing two counts, C as principal in the first degree and R as principal in the second degree in the first count, and R as principal in the first degree and C as principal in the second degree, in the second count, and where R is acquitted on the ground of self defense C cannot be convicted as principal in second degree.

2. The charge "Before the defendant Russell Kelley can be convicted of any crime, you as the jury trying this case, must find from the evidence that he acted of his own volition and not by direction and because of a fear of his father;" "An unlawful act committed by a child in the presence of his father, at his direction because of the criminal intent of the father and not because of the wrong of the child, is the crime of the father and not of the child," is erroneous where the testimony shows the son to be over seventeen years of age and there is nothing in the testimony to indicate that he was not in full possession of his mental and bodily faculties.

3. Where a child commits an unlawful act in the presence of his father and at his direction and because of the criminal intent of the father it must appear from the testimony that

the child was of immature years of mind and entirely under the domination, direction and control of the father, before the crime becomes that of the father and not of the child.

A Writ of Error to the Circuit Court for Madison County; M. F. Horne Judge.

Judgment reversed.

*Chas. E. Davis* and *J. R. Kelly,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and D. Stuart *Gillis,* Assistant, for the State.

BROWNE, C. J.—Charles Kelley and Russell Kelley, his 17-year-old son, were joinly indicted in the Circuit Court of Madison County for the murder of one Andrew Register in an indictment containing two counts; the first charged Charles Kelley as principal in the first degree and Russell Kelley as principal in the second degree, and the second count charged Russell Kelley as principal in the first degree and Charles Kelley as principal in the second degree.

They were tried jointly. Russell Kelley was acquitted, and Charles Kelley convicted of murder in the second degree.

From the view that we take of this case we need not refer to what transpired on the night before the homicide.

On the morning of the killing Charles and Russell Kelley drove up to the gate of Mrs. Lewis Fox's home where Register, his brother-in-law, was visiting. There seems to have been bad feeling on the part of Register of some years standing toward Charles Kelley, of which Kelley apparently had no knowledge until the night before.

When he drove up, on the morning of the homicide, he was met by Mr. or Mrs. Fox, or both of them, who say they urged him to go away, but instead of doing so, he asked Mrs. Fox to tell Register to come out. Mrs. Fox says she went in the house and told her brother not to go out there, but that Charles Kelley called him and he went out. They walked down the road some 30 or 40 yards when, according to Fox's testimony, Kelley called Register a God-damn liar. Fox does not say who struck the first blow, but says "they went together." Both the Kelleys testified that Charles asked Register what he was mad about and that Register replied that he knew what he was mad about, and that then Charles Kelley said, "If I have done anything I am willing to make any apology that I can;" to this Register replied, "I don't want any of your dam apologies." There was some further conversation which Russell did not hear until Register said, "Don't you dispute it." To which Charles Kelley replied, "Not disputing your wife's word at all, but if any one else said that it is a lie," and then Register struck him and they clinched and fell to the ground, with Charles Kelley on top, striking Register with his fist. Charles Kelley's testimony as to what occurded between him and Register is to the same effect as that of his son, but he further testifies that Register charged him with having perpetrated a dastardly act on his sick wife, and it was then that he said "not disputing your wife's word, but if any one else tells that on me it is a lie. With that he hit me; hit me over he eye. Then me and him went together." They were separated and Register walked back to the gate and through the yard into the house, and Charles Kelley walked back to his buggy.

The affray was over. Register was safely within the precincts of the house. Neither of the Kelleys was at-

tempting to follow him. The undisputed testimony shows that Register was very deliberate in getting his gun and going back to engage in another affray; went into the front room, opened a door and went into a shed room, from there went into the kitchen and came back through the house with his gun, and went out advancing towards Kelley. The testimony again differs as to who was the aggressor in this second affray. The witnesses for the State say that Charles Kelley attempted to shoot first, but his gun snapped, and that Kelley and Register shot about the same time. The Kelleys say that Register shot first, wounding Charles Kelley in the face, and then as Charles Kelley threw up his gun, he was shot in the hand by Register, and his gun discharged in the air. He thereupon handed the gun to his son, Russell Kelley, and Register at once shot at Russell, who returned the fire. Russell Kelley's second shot struck Registed, causing him to fall to the ground. From the effects of this wound he died.

The testimony points to Russell Kelley as the one who fired the fatal shot. Lewis Fox says, "The last shot that was made, the boy shot Register down in the yard." "The last shot the boy fired struck Register." Mrs. Register, the wife of the deceased, says, "It was the last shot that hit my husband." This shot was fired by Russell Kelley. Russell Kelley says that he shot Register twice, and when he shot the last time he saw his gun fall.

When Lewis Fox and Mrs. Register first testified, they stated positively that it was the last shot fired by Russell Kelley that struck Register. They were later recalled and modified their testimony in an attempt to make the case stronger for the State, but notwithstanding this modification, it seems quite clear from all the testimony that

the last shot fired by Russell Kelley inflicted the wound from which Register died.

The testimony is uncontradicted that after Charles Kelley was shot he handed the gun to his son, but it nowhere appears in the testimony that he told him to use it, or said anything to him that could be construed into instructions or directions to shoot Register.

The fifth assignment of error relates to this charge:

"Before the defendant, Russell Kelley, can be convicted of any crime, you, as the jury trying this case, must find from the evidence that he acted of his own volition and not by direction and because of a fear of his father." "An unlawful act committed by a child in the presence of his father, at his direction because of the criminal intent of the father and not because of the wrong of the child, is the crime of the father and not of the child."

This charge submits to the jury as an issue of fact, whether or not Russell Kelley shot by direction of his father, or because of the fear of him, although there was absolutely no testimony from which the jury could find or even infer that the son was directed by the father to shoot Register, or that Russell shot him becasue of fear of his father. There being no testimony upon which this charge could be predicated, it was harmful error.

The second part of this charge that "An unlawful act committed by a child in the presence of his father, at his direction because of the criminal intent of the father and not because of the wrong of the child is the crime of the father and not of the child," is not sound, as applied to the facts in this case. The principle upon which such a doctrine is predicated is that the child who commits an unlawful act at the direction of his father is one of such immature years or mind as to be entirely under the domination, direction and control of the father. Such was not

the condition here.   The son was over seventeen years of age, and so far as the testimony discloses was in full possession of his mental and bodily faculties.

We can readily see how this charge induced the remarkable verdict in this case, where the son who fired the fatal shot was acquitted, and the father convicted of murder in the second degree.

The verdict of acquittal of Russell Kelley could only have been reached by the jury upon one of three hypotheses:

(1)   That if Russell Kelley killed Register, he shot in self-defense.

(2)   That the fatal shot was fired by Charles Kelley and not by Russell Kelley.

(3)   That his father told him to shoot Register, and he was therefore guiltless of any offence.

We dismiss the last hypothesis, because it has no support in the testimony and is not sound-in-law.   Not a single witness testified that Charles Kelley when he handed the gun to his son told him to shoot Register or gave him any directions or instructions or made any request of him whatsoever.

The verdict could not have been predicated upon the second hypothesis, as the testimony seems to establish very clearly by the witnesses for the State as well as for the defense that Russell Kelley fired the fatal shot.

This brings us to the first hypothesis, that Russell Kelley killed Register in self-defense.   The testimony fully establishes this to be the case, and we can reach no other conclusion than that the jury acquitted Russell Kelley upon the ground that his life was in imminent peril, and if he had not killed Register he was in immediate danger of being killed by him, and this too without having been an aggressor in any way or having sought or provoked

the affray or took part in any difficulty that may have occurred between his father and Register. It is true the verdict does not say upon which count of the indictment it was based, still the testimony establishes the fact that Register was killed by Russell Kelley, it must have been on the second count which charged Russell Kelley with having shot and killed Register, and Charles Kelley with being present, aiding and abetting him in the commission of the crime. The verdict then presents this remarkable situation: Russell Kelley, assaulted by Register with a deadly weapon, shoots and kills him in self-defense, and Charles Kelley is convicted of murder in the second degree for being present, aiding and abetting his son in committing a justifiable homicide.

It seems quite clear that the jury acquitted Russell Kelley on the ground that he killed Register in self-defense, and that being so, Charles Kelley could not be lawfully convicted of any offense predicated upon his being present, aiding and abetting his son in committing a justifiable homicide.

The judgment is reversed.

TAYLOR AND WHITFIELD, J. J., concur.

ELLIS AND WEST, J. J., dissents.

WHITFIELD, J., concurring.

The testimony tends to show that the fatal shot was fired by Russell Kelley, the son, and that it was not fired by Charles Kelley, the father. As the deceased was advancing in the direction of the defendants with his gun when the shooting began, and as it is not

clear that Russell Kelley shot the deceased at the instance of Charles Kelley, the acquittal of Russell Kelley may have been upon the theory of self-defense, which has some support in the evidence and not upon the theory also included in the charges given that if Russell Kelley acted not of his own volition but "by direction and because of a fear of his father, the crime is that of the father and not of the child." If Russell Kelley fired the fatal shot, not at the instance of Charles Kelley or unlawfully, but in lawful self-defense, the conviction of Charles Kelley is erroneous. The nature of the testimony in vital particulars warrants a new trial for Charles Kelley.