**MAX BARKLEY v. STATE OF FLORIDA**

10 So. (2nd) 922            June Term, 1942
December 22, 1942             Division B
Rehearing Denied January 11, 1943

*Wallace Ruff* and *Hendricks & Hendricks,* for appellant.

*J. Tom Watson,* Attorney General, *Woodrow M. Melvin* and *John C. Wynn,* Assistant Attorneys General, for appellee.

THOMAS, J.:

Trial of appellant on an indictment charging him with murder in the first degree ended with a verdict convicting him of manslaughter.

The questions for our determination present: (1) the sufficiency of the evidence; (2) the admissibility of testimony of a statement made by the accused; (3) the propriety of the courts action anent a map which defendant attempted to have introduced; (4) the correctness of the order refusing defendant's requested charges, five in number; and (5) the validity of two instructions given by the court.

The deceased died of a wound from a pistol ball which entered his left cheek and lodged near his ear. He also suffered a wound and a powder burn between the thumb and index finger of his right hand.

We will not detail the actions of the defendant and the deceased in the altercation and the consequent death, but will relate so much of their conduct as is necessary to determine the sufficiency of the evidence to support the verdict. The deceased was standing in a building known locally as "The Mexico" when the defendant entered and asked him to go outside. Upon reaching the street they engaged in a dispute and blows were passed between them. The defendant brandished a revolver, whereupon the deceased retreated to the building and fled through it pursued by the defendant. They met again in the rear yard where they struggled and fell to the ground, the defendant underneath the deceased. While they were in this postion defendant's gun fired and the mortal wound was inflicted. This briefly is the story told by the witnesses for the State.

It is the appellant's contention that at this stage of the trial the court should have granted the motion to acquit him, because the State had failed to establish his guilt of any offense beyond a reasonable doubt. It is significant that the encounter had its inception when the defendant invited the deceased from the building into the street, but it is more important that when a revolver was displayed the deceased left the scene and retreated with the defendant in hot pursuit. The jury could well have found that the latter provoked the difficulty and when it had ended, instead of withdrawing from the scene, chased the defendant and renewed the combat. In view of these actions he could hardly be said to have been free from fault. Another fact which condemns his conduct

is the nature of the wounds which were received by the deceased. Not only was his victim fatally shot, but the flesh between the index finger and thumb of deceased's right hand was torn and burned, which clearly indicates that at the time he was attempting to protect himself from a weapon in the hand of his assailant. The description of the wounds refutes the suggestion that he could have had control of the gun when it was discharged. We think there was ample evidence to withstand a motion for a verdict finding the defendant innocent.

When the motion was denied the defendant gave his version of the affray. He admitted he called the victim out of the building and that as soon as they reached the street he asked him, "what kind of lies are those you have been telling on me?" He said that the deceased then hit him and they exchanged blows. He admitted the chase through the building and into the rear yard. There, he testified, the deceased turned on him and knocked him down. While they were struggling (he with his back to the ground and the deceased on top) the pistol fell from his pocket and during the contest for possession of it the deceased was wounded.

It seems to us that the salient facts in the case may be narrowed to the character of the wounds received, the identity of the aggressor and the pursuit. The first of these was not contradicted. The defendant by his own testimony established the facts that he called the deceased from the building and charged him with lying. He admitted that when his victim ran he pursued. Obviously it was his purpose to continue the difficulty. There is no question either that the weapon was his. These important elements of the State's case was emphasized by the story of the defendant.

There is some dispute about whether the yard back of the building was entirely closed, but it seems to us a fair deduction from the testimony that it was so nearly enclosed that when the deceased reached it in his retreat he felt at bay.

Appellant insists that the homicide was accidental, hence, the verdict unjustified. It is our view that an examination of the statute, Section 7141, C.G.L., 1927, (Section 782.07), Florida Statutes, 1941), denouncing "The killing of a human

being by the act . . . of another, in cases where such killing shall not be . . . excusable homicide . . ." and a comparison of it with Section 7136, C.G.L., 1927, Section 782.03, Florida Statutes, 1941), defining "excusable homicide" lead to the inescapable conclusion that the essential elements of the former were proven and that none of the ingredients of excusable homicide, as defined in the latter, could be deduced from the testimony which the jury heard.

Considering the evidence at the time the motion for an affirmative verdict was made, or even after the defendant had completed his testimony, there was complete justification for the conviction.

The next question is the challenge of the court's action in overruling the defendant's objection to testimony offered by the State about statements made by him shortly after his arrest giving his account of the affair. It is appellant's theory that these were confessions for the introduction of which no proper predicate was laid. This position is unsound. We have often discussed the precautions that must be taken before a defendant's own statements may be used against him, but there is no need to review them here because they are inapplicable.

No attempt was made to introduce the defendant's statements against him until he had given on the stand, in the role of witness, his account of the shooting. The evidence was introduced in rebuttal and was entirely proper because the statements were but admissions affecting his credibility as a witness and did not fall in the classification of confessions. Dedge v. State, 68 Fla. 240, 67 So. 43.

During the cross examination of a witness for the State counsel for the defendant asked him to identify a sketch of the premises and then, when redirect examination was concluded, requested that "this map [be] marked for identification." After the testimony of the defendant had been terminated and at the close of the rebuttal by the State the defendant sought to make the map a part of the evidence in the case by requesting that the "Court . . . let the Jury have the benefit of that map as the Court's evidence." The attorney for the State objected but stated that "if counsel

wants to introduce it in evidence, it is perfectly agreeable to the State to have it go to the Jury, but not as the Court's evidence." Final reference to this incident in the record is: "THE COURT: Motion denied. He can introduce it as the defendant's evidence." Whether the defendant then decided to present the evidence in his own behalf is not shown, but presumably he did not because defendant's attorney was the last speaker. This procedure does not disclose any abuse of discretion on the part of the court. The offer should have been made during the presentation of defendant's testimony and that opportunity having passed he should not have been allowed the benefit of the map "as the Court's evidence." The reason is patent. The defendant offered no testimony save his own, thus assuring his counsel of the closing address to the jury. Section 214, Criminal Procedure Act, (918.09, Florida Statutes, 1941). Under the ruling in Crosby v. State, 90 Fla. 381, 106 So. 741, he would have lost this advantage had the sketch been introduced by him. The court was correct in not allowing the defendant the benefit of the evidence and at the same time saving him the advantage of the final argument to the jury.

This brings us to a discussion of the correctness of the court's refusal of charges requested by the defendant numbered seven, nine, ten, eleven and twelve. The seventh and tenth instructions dealt with self-defense. There was no need of them in order that the jury might thoroughly understand this defense because of the correct exposition of the law given by the court in his general charge.

The eleventh requested charge was calculated to guide the jury in determining the credibility of the defendant's testimony. It, too, was unnecessary in view of the following one which was read to the jury and appears to have been sufficiently comprehensive: "The court further charges you that under the laws of this State a defendant may become a witness and testify in his own behalf, and in consideration of the testimony of such defendant, and the weight and credibility which should be given to the same, it is proper for you to take into consideration the interest which such defendant has in the trial and in its result, and all the circumstances

by which he is surrounded at the time he testifies, and also the reasonableness or unreasonableness, probability or improbability of what he says, just as you would the testimony of any other witness."

The ninth instruction requested by the defendant was devoted to the definition of misadventure or accident and the application of that concept to the facts, given in the instruction, to which it was appropriate. By the twelfth requested charge counsel for the appellant attempted to have the court advise the jury on the effect of testimony which he had been "required to give . . . against himself." Considering the views which we have expressed relative to the proper construction of the testimony in the case apropos "accident" and "confession" there was no occasion for these charges.

It is insisted by the appellant that the giving of the portion of the following charge which we have italicized was error: "You further charged that in weighing the testimony you may consider the manner of the witness on the witness stand; his or her bias or prejudice, if any; his or her apparent fairness or lack of fairness; the interest, if any, of the witness in the result of his or her testimony; the intelligence or otherwise of the witness, in order that you may judge of the correctness of his or her observation and his or her ability to detail correctly and intelligently what he or she has observed; *the position of the witness both at the time of the giving of his or her testimony and at the time of the happening of the event testified about; the reasonableness or unreasonableness of his or her testimony, as judged by your common-sense and every-day experience; any conflict or discrepancy as to material matters which you may find to exist in the testimony of the witness or the testimony of other witnesses whom you find have testified truthfully; and any corroborations in the testimony of other witnesses whom you find to have testified truthfully.*" It is our opinion that this instruction considered as a whole was without error and, of course, it is fundamental rule that the merit of an instruction shall not be judged by considering it piecemeal.

The final error urged by the appellant does not warrant discussion. By it he has attempted to present the correct-

ness of two sentences contained in the comprehensive charge on the right of self-defense. We have already said that the instruction of the court was adequate and it is but repetition to observe that the sufficiency of this charge cannot be measured by isolated portions.

No error having been made to appear the judgment of the circuit court is—

Affirmed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.