131 So.2d 7 (1961)
Frank A. DIECIDUE, Petitioner,
v.
STATE of Florida, Respondent.
No. 30913
Supreme Court of Florida.
May 24, 1961.
Rehearing Denied June 21, 1961.
*8 Frank Ragano, Tampa, for petitioner.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for respondent.
ROBERTS, Justice.
This case is before us on petition for certiorari directed to an opinion of the District Court of Appeal, Second District, Diecidue v. State, Fla.App., 119 So.2d 803, upon the theory of a conflict between the decision of that court and prior decisions of the Supreme Court of Florida.
The case against petitioner is founded upon an information consisting of three *9 counts which was filed against the petitioner and six co-defendants. The first and second counts charge the petitioner and the six co-defendants with violating the lottery laws of the State of Florida and the third count charges the petitioner and the co-defendants with conspiring to violate the lottery laws of the State of Florida. Upon pleas of not guilty the defendants were put to trial before a jury. The jury was unable to agree upon a verdict with reference to six of the petitioner's co-defendants which resulted in a mistrial as to them. Petitioner was found guilty under the first and second counts of the information.
The facts of this case as disclosed by the opinion rendered by the District Court of Appeal, Second District, are in substance: On March 22, 1958, law enforcement officers entered the home of the defendant with a search warrant, seized sundry items of bolita paraphernalia and arrested some of the defendants.
"At the time of the raid the appellant (petitioner here) was not present, nor did the state prove that he ever handled any of the * * * lottery paraphernalia which was seized. His conviction was on circumstantial evidence and no testimony was offered by the [appellant]." (Emphasis supplied.) Diecidue v. State, Fla.App., 119 So.2d 803, 804.
It is apparent that: the evidence against petitioner was wholly circumstantial in character; the State did not prove by positive or direct testimony that petitioner had knowledge of, or that he consented to, the illegal activities which allegedly took place in his home and he did not take the witness stand in his own defense.
Petitioner contends that: the evidence was insufficient to uphold a conviction and his motion for directed verdict, which was denied, should have been granted; the instruction given by the trial judge at the specific request of the jury upon the question of inferred possession amounted to a comment by the presiding judge, directly, indirectly or covertly to the fact that petitioner did not take the witness stand in his own defense; the testimony of an alleged expert witness was improperly admitted into evidence.
We first direct our attention to the contention of petitioner that the specific instruction given upon the request of the jury, after prolonged deliberation, which pinpointed the fact that the members of that body were interested primarily, if not exclusively, in the subject of presumed possession, constituted harmful and therefore reversible error.
We are not unmindful of the postulate that our statute, F.S. Section 918.09, F.S.A. makes specific reference only to the fact that the prosecuting officer may not make reference directly, indirectly or covertly to the fact that an accused in a criminal case did not take the stand in his own defense. Nevertheless, when a trial judge steps beyond the admonition contained in F.S. Section 918.10, F.S.A., wherein it is declared that "the presiding judge shall charge the jury only upon the law of the case [upon] the conclusion of argument of counsel, * * *" (emphasis supplied) it cannot be said "that the error complained of has (not) resulted in a miscarriage of justice." Way et al. v. State, Fla., 67 So.2d 321, 323.
Moreover such "stepping aside" can, and we believe in this case did, deny to the petitioner "the fair and impartial trial guaranteed to him by Section 11 of the Declaration of Rights of our constitution, F.S.A." Jones v. State, Fla., 92 So.2d 261.
Unlike the case of Reynolds v. State, 92 Fla. 1038, 111 So. 285, wherein the charge was possession of intoxicating liquor (We do not now decide because it is unnecessary to determine whether the instruction upon the subject of inferred possession given in the Reynolds case is applicable to, or in, a case of the character of the one now under consideration), *10 no one of the charges herein was specifically one of possession of any type of illegal contraband. The information filed in this case contains three counts. The petitioner was convicted only upon counts one and two. Counts one and two charge the petitioner and others with violating the lottery laws of the State of Florida. Neither of these charges specifically charges petitioner with the possession of contraband but it was necessary for the State to prove knowledge of, or consent to, by positive testimony, or by circumstantial evidence which meets the criminal rule with reference thereto, in order to justify a verdict of guilty on counts one and two of the Information. Allen v. State, Fla., 62 So.2d 70.
We have delayed quoting the charge which is challenged and which was given as hereinbefore recited upon special request of the jury, after lengthy deliberation, and which obviously pin-pointed not only an instruction upon the law which might, under ordinary circumstances, have been appropriate but the trial judge made direct reference to the defendant, Diecidue, by name in said charge. Human experience dictates that jurors, especially in criminal cases, are ever alert to detect the view which the trial judge entertains with reference to the evidence and to the guilt or innocence of the defendant. The jurors in this case could not have been oblivious of the fact that the trial judge, at least covertly drew their attention to the failure of the petitioner to take the stand in his own defense. The prohibition against comment to the jury about the failure of a defendant to testify is a partial legislative implementation of the Fifth Amendment to the Constitution of the United States and the Declaration of Rights. If a defendant can be compelled to give testimony by holding him up to ridicule and scorn before a jury for failure to testify, he then is in fact coerced into giving testimony against himself in violation of the spirit, if not the letter, of his rights. The holding him up to ridicule simply becomes an alternative method to the rack and torture so prevalent in medieval times.
After the jury had been deliberating for some time the members thereof returned to the court room where the following colloquy between the court and juror number four took place:
"The Court: Gentlemen, do you have an inquiry to direct to the Court, or a report to make?
"Juror No. 4: Your Honor, I am not the foreman. The jury would like you to read again the definition of possession and also to tell us which count is the conspiracy count.
"The Court: Well, that last one is easy. The third count is the conspiracy count.
"Possession is usually defined as having personal charge of or exercising right of ownership, management or control of the thing said to have been possessed. To constitute possession, there need not necessarily be an actual manucaption of the things possessed; that is, it does not have to be held in the hand, nor is it necessary that it be otherwise actually upon the person of the possessor. There must, however, be a conscious and substantial possession by the accused as distinguished from a mere involuntary or superficial possession. Whether or not the accused, or any of them, were in conscious and substantial possession of the things alleged to have been found in the premises said to have been owned by the defendants Diecidue, may be lawfully inferred by the surrounding circumstances, especially in the absence of contrary or exculpatory evidence." (Emphasis supplied.)
The instruction above quoted which is challenged herein was given to the jury in the original charges without objection by petitioner. However, upon this specific *11 request by the jury, which indicated clearly that their thoughts were on the question of possession and its effect, counsel for petitioner strenuously objected upon the ground that the trial court improperly established the material fact of possession and directly or at least indirectly or covertly called the jury's attention to the fact that the appellant had not testified in his own behalf. With reference to this subject, the District Court in its opinion made the following pronouncements:
"Viewing an instruction in isolation is a far different matter than viewing it in context with all other instructions, as the jury does. The test is whether the law is fairly presented to the jury, and it is well established that a challenged instruction must be considered in connection with all other instructions bearing on the same subject. Driver v. State, Fla. 1950, 46 So.2d 718; Higginbotham v. State, 155 Fla. 274, 19 So.2d 829 (1944); Barkley v. State, 152 Fla. 147, 10 So.2d 922 (1942); Smith v. State, 149 Fla. 511, 6 So.2d 383 (1942).
"When considered with the other instructions, we cannot hold this instruction error. The jury was properly informed that they could take into consideration all the surrounding circumstances in determining whether or not the accused was in conscious and substantial possession of the lottery paraphernalia. Also, when read in context, we cannot see that this instruction violated appellant's rights by calling attention to the fact that he did not testify."
We have no disagreement with the District Court pronouncement of the law with reference to the fact that ordinarily a challenged instruction must be considered in connection with all other instructions bearing on the same subject. This is the general rule. In this case, however, the instruction was actually given in isolation and was a repeated instruction given at the request of the jurors who were obviously directing their consideration of the case to the point of constructive possession. Under the circumstances of this case we are compelled to hold that the challenged instruction having been given to the jury at its request in isolation must be considered as such an instruction and in any event we feel that it would be difficult to believe that the jury did not so consider said instruction; and this becomes definitely clear when the fact is considered that the jury was unable to agree upon the guilt of the petitioner's six co-defendants against whom direct and positive testimony of their illegal activities was given as distinguished from circumstantial evidence, and as to said co-defendants a mistrial resulted.
Furthermore the trial judge failed to repeat, when giving the charge calling attention to the fact that the defendant had not taken the stand in his own behalf, the instruction that such must not be held against the defendant.
The only reasonable inference to be drawn from the judge's instruction is that possession could be inferred from the surrounding circumstances in the absence of contrary or exculpatory evidence on the part of petitioner and that absent such evidence the possession and use of his property had been established by the State. This is the effect of the above quoted instruction because the issue was whether the petitioner was "in conscious and substantial possession" of the bolita paraphernalia, a state of mind of petitioner, himself, about which he alone could give contrary or exculpatory evidence. Regardless of this fact, however, we are convinced that the challenged instruction as given by the court was a reference, in the presence of the jury, indirectly or covertly to the fact that petitioner did not testify in his own defense, without further charging the jury that failure of the defendant to take the witness stand must not be weighed against him.
Although this is not a violation of F.S. Section 918.09, F.S.A. it constitutes, nevertheless, *12 a fundamental, therefore, harmful error. We are convinced that it could have had, and in all probability did have, an effect upon the jury in this case which caused the trial to result in a miscarriage of justice. We speak of the challenged instruction as constituting fundamental error because it is more devastatingly damaging to the defendant for the presiding judge to fail to observe the directive contained in F.S. Section 918.10, F.S.A. and even intimate that some significance should be given to the fact that the accused did not take the stand in his own defense than for the prosecuting attorney to state directly that the defendant failed to testify.
The specific instruction given at the request of the jury, under all the facts and circumstances of this case and pin-pointing as it did the petitioner's failure to give "contrary or exculpatory evidence" amounts to a violation of F.S. Section 918.10, F.S.A. The instruction constituted fundamental error, and said repeated instruction in this case with direct reference to Diecidue, the petitioner, was nothing more nor less than a "remark [within] the hearing of the jury that is capable, directly or indirectly, expressly, inferentially, or by innuendo, of conveying (an) intimation as to what view he takes of the case * * *." Lester v. State, 37 Fla. 382, 20 So. 232, 234; Leavine v. State, 109 Fla. 447, 147 So. 897. See also, State v. Owenby, 226 N.C. 521, 39 S.E.2d 378.
The challenged instruction could, and probably did, have an effect upon the jury which resulted in the denial to the petitioner of a fair and impartial trial which is guaranteed to every defendant in a criminal case by Section 11, Declaration of Rights, of our State Constitution, F.S.A. Every citizen's right to a fair and impartial trial by a jury of his peers has been jealously protected over the years by the Supreme Court of Florida. We have held this constitutional guarantee to apply not only to those constituting the upper eschelon of our economic and social life, but just as forcibly to those who might be considered among the dregs of society.
We are of the view that petitioner was not accorded the type of trial which is guaranteed to him by our Declaration of Rights. We therefore feel that this case should be reversed for a new trial.
We find the decision of the District Court herein in direct conflict with the same point of law regarding a trial court's instruction to the jury in Leavine v. State, 109 Fla. 447, 147 So. 897, 902 "* * * a trial court should avoid making any remark within the hearing of the jury that is capable directly or indirectly, expressly, inferentially or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character, or credibility of any evidence adduced," (emphasis supplied) and the cases herein before cited. See also, Lewis v. State, 55 Fla. 54, 45 So. 998; Lester v. State, 37 Fla. 382, 20 So. 232.
We cannot refrain at this juncture from noting that this is by no means the first time our attention has been directed to departures from the norm as above outlined. In Shoultz v. State, Fla., 106 So.2d 424, we were compelled to reverse for a new trial because the presiding judge, after the jury had been empanelled, discussed in the corridor with a juror the question of his qualification to sit as a juror. Again in Jones v. State, Fla., 92 So.2d 261, we were constrained to a reversal because the trial judge states to the jury, "There wouldn't be any point in having but one of you if somebody could just say, `Well, it's this way, Boys, and you are going to go my way, or else.' When lunch time comes, we always send a [Sheriff] in with a bunch of hay to a fellow like that." In the case of Allen v. State, Fla., 62 So.2d 70, we were required to set aside the verdict and judgment of guilty as charged because the presiding judge stated to the jury, "I think it is a strange way for us to celebrate the Fourth of July, to work as we have been *13 today, but we kind of got the bear by the tail and have to go through with it".
These are not the only instances of infractions but they do illustrate the point which we are attempting to emphasize. The judge who tried this case appears to have a penchant to give the jury, sometimes very cleverly, at least a suggestion of the view which he takes of the case and the verdict which he thinks should be rendered. Such conduct is not consonant with our judicial procedure provided for a free people every one of whom although charged with a crime, is entitled to a presumption of innocence until his guilt is established beyond and to the exclusion of every reasonable doubt and to a fair and impartial trial by a jury of his peers who must consider the case only upon the sworn testimony given from the witness stand and upon the instructions of the judge only "upon the law of the case". (Emphasis supplied.)
Although we have decided that a new trial should be granted for the reasons hereinabove delineated we consider it appropriate nevertheless to discuss briefly the contention that the evidence was insufficient to justify a verdict of guilty as charged in counts one and two. The circumstantial evidence in this case is indeed weak when considered in the light of our opinions and decisions in Allen v. State, Fla., 62 So.2d 70; Gustine v. State, 86 Fla. 24, 97 So. 207; Parish v. State, 98 Fla. 877, 124 So. 444, and the opinion and decision of the District Court of Appeal, First District, in the case of Harrison v. State, Fla.App., 104 So.2d 391, 394.
For the reasons stated the opinion of the District Court of Appeal, Second District, challenged herein is hereby quashed and the cause remanded for a new trial.
It is so ordered.
TERRELL and DREW, JJ., concur.
HOBSON, J., concurs specially.
THOMAS, C.J., and THORNAL and O'CONNELL, JJ., dissent.
HOBSON, Justice (concurring specially).
I concur in the opinion prepared by Mr. Justice ROBERTS. Nevertheless I consider it appropriate to discuss the contention that the evidence was insufficient to justify a verdict of guilty as charged in counts one and two.
It must constantly be borne in mind that one charged with a criminal offense is presumed to be innocent until he is proven guilty beyond and to the exclusion of every reasonable doubt.
How can it be held that Diecidue was proven guilty beyond and to the exclusion of every reasonable doubt under counts one and two of the information in the face of the fact that his six co-defendants charged with the actual operation of bolita and possession of bolita paraphernalia in his home were not found guilty of such charge? Petitioner's guilt hinged entirely upon establishment of the guilt of his six co-defendants or at least some of them. This might not have been true had petitioner been tried alone, upon a separate and specific information against him but such was not the case.
It is true that petitioner's guilt was wholly dependent upon the guilt of his six co-defendants because under the circumstantial evidence enucleated in the District Court's opinion petitioner could have been found guilty under counts one and two only upon an inference of constructive possession of bolita paraphernalia. Since the six co-defendants were not found guilty of conducting a lottery or of real possession of bolita paraphernalia in petitioner's home it cannot be said that he was guilty of constructive possession by virtue of knowledge of, or consent to, the use of his home for the purpose of conducting a lottery. See Kelley v. State, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465. This situation might be analogized *14 to one wherein a person is charged with being an accessory before or after the fact. The fact must first be established.
According to the District Court's opinion petitioner was absent from his home during the alleged bolita operations but apparently his wife was present. This certainly does not prove beyond and to the exclusion of every reasonable doubt scienter on his part. The pages of history are replete with accounts of the activities of duplicitous wives. However, Mrs. Diecidue was not found guilty under any count of the information.
If the foregoing observations should not be sufficient to require a reversal of this case for a new trial then let us consider the definite statement in the opinion of the District Court "His conviction was on circumstantial evidence * * *".
The resume of the evidence set forth in the District Court's opinion discloses that the circumstantial evidence necessarily relied upon by the State was not sufficient to meet our rule with reference to this type of evidence in a criminal case.
In the case of Gustine v. State, 86 Fla. 24, 97 So. 207 and Parish v. State, 98 Fla. 877, 124 So. 444, we held:
"If the facts in proof are equally consistent with some other rational conclusion than that of guilt, * * * if the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof however great the probability may be." (Italics supplied.)
In connection with the subject of the use of circumstantial evidence in criminal cases we quote with approval from the case of Harrison v. State (District Court of Appeal, First District), Fla.App., 104 So.2d 391.
"We are fully aware of the burden which our system of jurisprudence places upon those charged with enforcement of the law. In the absence of positive evidence resort must be frequently made to circumstances. When evidence of this kind is relied upon for conviction, it should be acted upon with extreme caution. Our responsibility in such cases  human liberty being involved  is doubly great. The cloak of liberty and freedom is far too precious a garment to be trampled in the dust of mere inference compounded. As was stated in Adams v. State, [Fla. 102 So.2d 47], this court is fully cognizant of the rule that conviction may be had upon circumstantial evidence alone, and although the State's burden does not extend to an absolute metaphysical and demonstrative certainty in proving a crime by circumstantial evidence, it must be sufficient as to every essential element of the crime charged to meet the requirement of the rule as set forth above. When measured in a light most favorable to the State, the evidence adduced in this case is not sufficient to close the gap to the reasonable hypothesis of innocence; and is therefore insufficient to sustain conviction." (Italics supplied.)
To uphold a conviction in this case it was necessary for the jury to infer from the circumstantial evidence that petitioner had knowledge of, or consented to, the use of his home in connection with the alleged bolita operation.
If this were a civil action it might be said that the circumstantial evidence adduced was sufficient to meet the requirements of our rule with reference to this type of evidence. This is so because it might be conceded that the inference drawn from the circumstantial evidence outweighed "all contrary inferences to such extent as to amount to a preponderance of all of the reasonable inferences that might be drawn from the same circumstances". King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858, 859; Voelker v. *15 Combined Insurance Company of America, Fla., 73 So.2d 403.
The circumstantial evidence in this criminal case however does not fulfill the requisite conditions of the rule applicable thereto. We have held that "* * * the rule in civil cases when circumstantial evidence alone is relied upon differs from and is less stringent than the rule which governs in criminal cases". Voelker case, supra. Although the circumstantial evidence in this case might be susceptible of the inference that petitioner had knowledge of or consented to the use of his home for the purpose of conducting a lottery and that such inference preponderates over all other reasonable inferences, it cannot be held that such inference is to the exclusion of every other reasonable inference which might be gathered from the proven circumstances. It is not wholly unreasonable to infer from the circumstantial evidence that he knew nothing about the obviously unproved, but alleged bolita operations, which were charged but not established to the satisfaction of the jury, to have been carried on in his home. Especially is this certain in consideration of the criminal rule of law that a defendant is clothed with the presumption of innocence throughout his trial.
Upon the inference that petitioner had knowledge of, or consented to the use of his home for an illegal purpose it was essential that the jury predicate the further inference that the asserted constructive possession was substantial since there was complete lack of evidence of manucaption.
It appears quite clearly that the jury pyramided inference upon inference, or presumption upon presumption, or conjecture upon conjecture and that such procedure was approved by the District Court of Appeal in its opinion and decision which is challenged herein and hereby. Such procedure is not permitted even in a civil suit except where the first inference meets the test of the criminal law rule with reference to circumstantial evidence. Voelker v. Combined Ins. Co. of America, supra.
The District Court's opinion and decision herein is patently in conflict with all of our prior decisions wherein we have enunciated the rules in criminal cases that: first, a person cannot be convicted of being a participant in the perpetration of a crime until and unless the corpus delicti is established beyond and to the exclusion of every reasonable doubt, Stoutamire v. State, 133 Fla. 757, 183 So. 316; Deiterle v. State, 101 Fla. 79, 134 So. 42; Cross v. State, 96 Fla. 768, 119 So. 380; Lee v. State, 96 Fla. 59, 117 So. 699; Nickels v. State, 90 Fla. 659, 106 So. 479; Holland v. State, 39 Fla. 178, 22 So. 298; second, the presumption of innocence follows the defendant throughout his trial, Broadnax v. State, Fla., 57 So.2d 651; Pinder v. State, Fla., 53 So.2d 639; Kilbee v. State, Fla., 53 So.2d 533; Roe v. State, 96 Fla. 723, 119 So. 118; third, when circumstantial evidence alone is relied upon for conviction the inference of guilt deducible therefrom must be to the exclusion of every reasonable hypothesis of innocence  not simply preponderate over, or outweigh, all other reasonable inferences as in a civil case. It cannot be predicated merely upon "some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof however great the probability may be". [86 Fla. 24, 97 So. 208.] (Italics supplied.) Gustine v. State, and Parish v. State, supra; fourth, an inference may not be predicated upon an inference. Harrison v. State, and Gustine v. State, supra. Consider also the Voelker case, supra.
As has been succinctly stated by Mr. Justice ROBERTS a studied analysis of the jury's verdict points unerringly to the fact that it did not accord the petitioner a fair and impartial trial but rendered a verdict based upon prejudice, malice and passion created in large measure by the expressed attitude of the trial judge.
*16 The conclusion reached and the judgment entered in and by the opinion prepared by Mr. Justice ROBERTS are inescapable.
TERRELL, ROBERTS and DREW, JJ., concur.
O'CONNELL, Justice (dissenting).
I am unable to agree either with the majority opinion of Justice ROBERTS or the special concurring opinion of Justice HOBSON for several reasons, the first being that I cannot find a conflict between the decision of the District Court of Appeal and a previous decision of this Court or another District Court of Appeal on the same question of law.
In his brief appellant, Diecidue, argues three points.
First, he contends that the decision of the District Court of Appeal is in direct conflict with the decisions of this Court on the same point of law as announced in the cases of Head v. State, Fla. 1952, 62 So.2d 41; Parish v. State, 1929, 98 Fla. 877, 124 So. 444; Gustine v. State, 1923, 86 Fla. 24, 97 So. 207; and Solomon v. State, 1934, 115 Fla. 310, 156 So. 401, and with the decision of the District Court of Appeal, First District, in the case of Harrison v. State, Fla. App. 1958, 104 So.2d 391.
Second, he argues that said decision is in conflict with the decisions of this Court in Roberson v. State, 1898, 40 Fla. 509, 24 So. 474; Lester v. State, 1896, 37 Fla. 382, 20 So. 232; and Leavine v. State, 1933, 109 Fla. 447, 147 So. 897.
Third, he contends that said decision is in direct conflict with the decision of this Court in Atlantic Coast Line Ry. Co. v. Shouse, 1922, 83 Fla. 156, 91 So. 90.
These points will be discussed in reverse order.
In this case, as set forth in the opinion of the District Court, Mr. Ross Anderson testified for the State as an expert witness that in his opinion a lottery check-up was being conducted in the house alleged to be occupied by appellant as his home at the time it was raided. The question which elicited his testimony asked that he base his testimony on his experience, his personal observations of the scene at the time of the raid, and his personal analysis and examination of the evidence seized at the raid and admitted in evidence at the trial. This question and the testimony which followed did not involve a hypothetical situation as was the case in Atlantic Coast Line Ry. Co. v. Shouse, supra.
This fact alone makes it unnecessary to delve into the facts which were shown by the evidence, or to discuss the fact that bolita or cuba operations are not matters within the common knowledge of the average citizen in order to illustrate the distinction between this case and the Atlantic Coast Line case.
I conclude that there is no conflict between the opinion of the District Court and the case of Atlantic Coast Line Ry. Co. v. Shouse, supra
In the second point raised by appellant he contends that the instruction on possession repeated by the trial court at the request of the jury amounted to a comment by the trial judge on the weight, character and sufficiency of the evidence on a vital point in the case, and that the words "especially in the absence of contrary or exculpatory evidence" following identification of the appellant and his wife as the alleged owners of the premises involved called attention to the fact that appellant had not testified.
If I could agree with the appellant's interpretation of the charge, which interpretation is followed in the majority and special concurring opinion in this cause, I could probably agree to the conclusion which appellant urges.
However I cannot agree that the portion of the charge which advises the jury that the fact of possession may be inferred from *17 the circumstances, i.e. may be based on circumstantial evidence, constitutes unauthorized comment on the weight or sufficiency of the evidence. Nor can I agree that the words "especially in the absence of contrary or exculpatory evidence" can be construed as calling attention to the fact that the appellant Diecidue did not testify.
It must be remembered that the charge had been given at the conclusion of the trial without objection by appellant. He contends that it became erroneous only when repeated in isolation to the other charges.
It must also be noted that the charge in question was given to apply to all of the seven defendants involved in the trial, including appellant Diecidue and his wife. Further, it is to be noted that as it referred to ownership of the premises it read "defendants Diecidue" and did not single out appellant. Therefore it referred to both appellant and his wife. The wife was not found guilty.
Being unable to agree with the appellant's interpretation, construction or effect of the charge, I therefore cannot agree that the opinion of the District Court can be said to be in direct conflict with the decisions of this Court above cited.
The first point raised by defendant in effect is that the District Court erred in upholding the trial court's refusal to grant appellant's motion for directed verdict of acquittal.
In its opinion the District Court on this issue quoted from the cases of Victor v. State, 1939, 141 Fla. 508, 193 So. 762 and Harrison v. State, Fla.App. 1958, 104 So.2d 391. Appellant does not contend that the rule of law stated in the portions of those cases as quoted by the District Court are erroneous or in conflict with other cases of this or another District Court. His argument, as I see it, is simply that under the rules of law so quoted the evidence in this case was insufficient to support a verdict and therefore the trial court should have directed a verdict for appellant and the District Court should have reversed the trial court for failure to do so.
This would be a proper argument if the case were before us on appeal, but it is here on a petition for certiorari on the theory of a conflict in decisions.
In Nielsen v. City of Sarasota, 1960 Fla., 117 So.2d 731, this Court explained that generally conflicts, which justify our taking jurisdiction on petitions for certiorari, arise where the District Court either (1) announces a rule of law in conflict with another rule previously established by this Court or another District Court, or (2) where the District Court applies a rule of law to substantially the same set of facts in a manner to produce a different result than that reached in a prior case decided by this Court or another District Court.
Quite obviously the first situation does not apply here for the rules of law announced by the District Court in this case are not inconsistent with any prior case decided by this Court or any other District Court.
Nor do I find that the facts recited in the District Court's opinion are such that it can be said that any real or embarrassing conflict results from that opinion and any other on the same point of law.
In its opinion the District Court, without detailing the evidence, simply stated that although the evidence against appellant was circumstantial, that he was not shown to have handled any of the lottery paraphernalia seized, and that he was not in his home at the time of the raid at which the lottery paraphernalia and the other defendants were found therein, "* * * there is circumstantial evidence from which the jury could have concluded, as it did in the verdict, that the defendant was implicated."
The District Court had the duty to determine whether the circumstantial evidence in the record on appeal before it was sufficient to meet the test set forth in the cases cited in its opinion and like cases. It determined *18 that the evidence was sufficient and on the face of the opinion I cannot say that it was not.
It is my view that we are limited to the face of the opinion in determining whether a conflict in decisions exists which will allow us to take jurisdiction of a cause on the theory that the District Court applied a correct rule of law to substantially the same facts yet reached a different conclusion from that reached in a prior case. We are allowed to go behind the District Court's opinion into the record and merits only after it is determined that the opinion on its face is in conflict with another.
If we did not follow this rule we would in effect give each litigant who petitions for certiorari an additional appeal when he is entitled to and our system can afford him only one.
I am of the view that the subject opinion of the District Court does not apply a rule of law to produce a different result in a case which involves substantially the same controlling facts as found in those cited by appellant and that we do not have jurisdiction to review this case under this or any other of the points advanced by appellant.
While I would not get to the merits of this case because I do not feel we have jurisdiction to review it, the majority feel otherwise, therefore it is necessary that I indicate my views on the opinions filed herein.
What I have said above regarding the contention of the appellant that the trial court committed harmful error in giving the charge discussed in the majority opinion of Justice ROBERTS indicates why I cannot agree with that opinion.
Since the special concurring opinion by Justice HOBSON centers on a somewhat different point than the majority opinion I must also state my views on one phase thereof.
In his opinion Justice HOBSON questions how appellant Diecidue could be held to have been proven guilty when his six co-defendants who were actually in appellant's home when the lottery paraphernalia was found there were not found guilty. As to these six co-defendants the jury could not agree and a mistrial was declared.
As I view the matter the answer to this question is simple.
The offenses charged against appellant and his six co-defendants are of the type which may be committed by one person alone. Thus, as the trial judge properly charged, the jury could convict or acquit one or more of the defendants without regard to its verdict as to the others.
It was not necessary that the jury acquit or convict all of them. F.S.Sec. 919.17, F.S.A. makes this clear, saying:
"On the trial of two or more defendants jointly the jurors may render a verdict as to such defendant in regard to whom the jurors agree."
This however does not directly meet the point of Justice HOBSON'S opinion on this item.
As I understand it he reasons that since the jury did not find the co-defendants guilty of conducting a lottery or of real possession of such paraphernalia in appellant's home the jury could not therefore find him guilty of the crime charged.
In his view a finding of guilt of one or more of the co-defendants was a necessary condition precedent to the conviction of the appellant since his possession of the lottery paraphernalia was constructive only. With this I cannot agree.
The bare fact is that the jury had the right to convict only appellant and acquit the co-defendants.
As above stated the offenses involved here were such that the jury could have convicted one or more defendants and found the others not guilty and those found guilty would have no complaint.
*19 Each count of the informations and all of the evidence, insofar is it was applicable, could be visited on each defendant.
The basic question then is whether the evidence in the record was sufficient to support a conviction of the appellant as the trial court, the jury, and the District Court of Appeal found it was, and not whether it was sufficient as to the co-defendants.
The mistrial as to appellant's co-defendants is not an adjudication of the insufficiency of the evidence to support a conviction of the appellant or the co-defendants. It stands only for the fact that as to the co-defendants the jury could not agree as to either their guilt or innocence. It in no wise colors or affects the sufficiency of the evidence as to the appellant.
Nor can the question of inconsistent verdicts be involved here since the mistrial of appellant's co-defendants does not result in a verdict.
I have considered the suggested analogy between this case and the case of Kelley v. State, 1920, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465.
In the Kelley case this Court stated that the jury could have only found that the murder was committed by the son and that it was justifiable homicide. It then reasoned that the killing being justifiable the father could not lawfully be convicted of aiding and abetting his son in committing a justifiable act.
However, there is no basis in this case upon which it can be said that the mistrial as to the co-defendants in any way determined that the acts of either the co-defendants or appellant were justifiable or were not criminal. All of the defendants were charged as principals and all of the evidence, insofar as it applied, could be visited on each of them.
For the reasons above expressed I would discharge the writ of certiorari.
THOMAS, C.J., and THORNAL, J., concur.