143 So.2d 458 (1962)
Harry E. KING, Petitioner,
v.
STATE of Florida, Respondent.
No. 31623.
Supreme Court of Florida.
July 11, 1962.
L. Grady Burton, Wauchula, and Chester Bedell, Jacksonville, for petitioner.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for respondent.
PER CURIAM.
The historical background is set forth in the case of Gordon v. State, Fla., 104 So.2d 524 and King v. State, Fla.App., 134 So.2d 502. This court has jurisdiction to review the matter; compare Alkire's Estate, 144 Fla. 606, 198 So. 475; Way v. State, Fla., 67 So.2d 321; Diecidue v. State, Fla., 131 So.2d 7; and Trafficante v. State, Fla., 92 So.2d 811. A careful examination of the record demonstrates that the Circuit Court, acting as an appellate court, departed from essential requirements of the law in affirming King's conviction on the sole ground that the District Court's opinion in the Gordon case settled all of the points raised on the appeal and the questions involved therein. Further, it appears that the trial court inadvertently failed to observe the rule of *459 the decision announced by this court in the Way, Diecidue and Trafficante cases, supra, applying F.S. 918.09, F.S.A., prohibiting a prosecuting attorney from commenting on the failure of an accused to testify on his own behalf.
Accordingly, certiorari is granted, the opinion of the District Court is quashed with directions to vacate and set aside the decision of the Circuit Court and to remand the case to that court with directions to decide the appeal on the merits in accordance with our prior decisions.
It is so ordered.
ROBERTS, C.J., and TERRELL, J., concur.
DREW, J., concurs with opinion.
HOBSON, (Ret.), J., concurs specially with opinion.
THOMAS and O'CONNELL, JJ., dissent.
THORNAL, J., dissents with opinion.
DREW, Justice (concurring).
It is my view that the Circuit Court acting as an appellate court departed from the essential requirements of the law in affirming King's conviction on the sole ground that the District Court's opinion in the Gordon case settled all of the points raised on the appeal and the questions of law involved therein. King was entitled under the Constitution and laws of this State to have his appeal disposed of on the merits by the Circuit Judge. The District Court's opinion denying certiorari in these circumstances, I think, constitutes a direct conflict with the innumerable decisions of this Court holding that it is the duty of an appellate court "to decide for itself both the probative force of evidence as shown by the record, and the law applicable thereto, and to render the judgment or decree which in law should be rendered." In re Alkire's Estate, 1940, 144 Fla. 606, 198 So. 475, and many other cases. I would, therefore, grant certiorari, quash the District Court's opinion with directions to vacate and set aside the decision of the Circuit Court and remand the case to that court with directions to decide the appeal on the merits in accordance with our prior decisions.
HOBSON, (Ret.), Justice (concurring specially).
This case is before us on a petition for a writ of certiorari to the District Court of Appeal, Second District. The petitioner asserts that the decision of the District Court is in direct conflict with a number of prior decisions of this court on several different points of law.
It is unnecessary for the purposes of this opinion to enucleate in detail the factual background of this case which was discussed at some length in a former opinion. Gordon v. State, Fla. 1958, 104 So.2d 524.
A brief history of the events leading up to this petition for a writ of certiorari is, however, necessary to an understanding of the extant issues. In May, 1956, the petitioner, King, was convicted, along with four other defendants, in a joint trial in the Criminal Court of Record of Polk County, on two counts of an information charging conspiracy to commit perjury and on two counts charging subornation of perjury. Petitioner and the defendants Gordon, Busbee and Arnold, appealed their felony convictions (subornation of perjury) to this court, which reversed and ordered a new trial. Gordon v. State, Fla. 1958, 104 So.2d 524. Thereafter, petitioner's misdemeanor convictions (conspiracy to commit perjury) were reversed by the Circuit Court for Polk County.
In January, 1959, petitioner was retried separately on both the charges of subornation of perjury and conspiracy to commit perjury. The jury returned verdicts of not *460 guilty as to the subornation charges but convicted petitioner of Counts 1 and 2, charging conspiracy to commit perjury. Petitioner appealed his conviction of the charges to the Circuit Court for Polk County.
In the meantime, at a separate trial, the defendant Gordon had been convicted on charges of subornation of perjury and had appealed to the District Court of Appeal, Second District. In May, 1960, the District Court of Appeal affirmed Gordon's conviction. Gordon v. State, Fla.App., 119 So.2d 753.
The Circuit Court, in determining the merits of petitioner's appeal, relied on the decision of the District Court of Appeal in the Gordon case, and entered the following order:
"ORDER
"This is an appeal from the Criminal Court of Record, in and for Polk County, Florida, wherein conviction and judgment was entered against defendant, Harry E. King, for the offense of unlawful conspiracy to commit the offense of perjury. This is an outgrowth of a case which involved H.P. Gordon, Harry E. King, James L. Busbee, Rollie Arnold and Sentell Monk, at the first trial all of the defendants were convicted and upon appeal to the Supreme Court the cause was reversed and a new trial ordered; thereafter the Judge of the Criminal Court of Record granted the defendant King's Motion to Sever; Arnold and Busbee entered pleas of guilty. King and Gordon were tried separately. Gordon was convicted of the offenses of unlawful conspiracy to commit the offense of perjury and subrogation [sic] of perjury and King was convicted of the offense of unlawfully conspiring to commit the offense of perjury on two counts. Gordon's conviction was appealed to the District Court of Appeal of Florida, Second District, which was affirmed, and upon Petition of Certiorari to the Supreme Court of Florida, the decision of the District Court of Appeal of Florida, Second District, was sustained.
"King's conviction being of a lesser offense placed the appeal of his case in the Circuit Court and the undersigned was assigned by the Chief Justice of the Supreme Court of Florida to hear and determine said appeal. The facts of the two cases are based upon identical acts and circumstances surrounding the commission of the offenses and the same principles of law apply and control each trial. The able opinion of the District Court of Appeal of Florida, Second District, in the case of H.P. Gordon v. State of Florida, 119 So.2d 753, settles the questions of law and is determinative of this case adverse to the appellant; and the Court being fully advised in the premises, it is upon consideration thereof
"ORDERED, ADJUDGED AND DECREED that the judgment of the Criminal Court of Record, in and for Polk County, Florida, entered in this cause be and is hereby affirmed." (Italics supplied.)
Thereafter, a writ of certiorari was sought from the District Court of Appeal, Second District, to review the affirmance of petitioner's conviction by the Circuit Court. King v. State, Fla.App. 1961, 134 So.2d 502. The District Court rendered an opinion denying the petition for a writ of certiorari. It is this decision that we are called upon to review by certiorari.
Our jurisdiction in this cause hinges upon a determination of the twofold query: First, whether it appears from the "record proper"[1] that the Circuit Judge committed *461 fundamental error, in the light of the organic law, in failing to give to Petitioner a review of his appeal upon the merits of his own case and thus rendered a decision (affirmed by the District Court) which conflicts with innumerable decisions of this Court consistently upholding Section 12, Declaration of Rights, F.S.A., and Article V, Section 6(3) of the Florida Constitution, F.S.A.; second, whether the decision of the Circuit Court and that of the District Court of Appeal are in direct conflict on the same point of law with the decisions of this Court in the cases of Diecidue v. State, Fla. 1961, 131 So.2d 7; Gordon v. State, Fla. 1958, 104 So.2d 524; Trafficante v. State, Fla. 1957, 92 So.2d 811; Way v. State, Fla. 1953, 67 So.2d 321; Simmons v. State, 139 Fla. 645, 190 So. 756; and Rowe v. State, 87 Fla. 17, 98 So. 613.
Because of my conclusion that the first prong of this bipartite question should be answered in the affirmative I will discuss the second primarily in connection with the merits of this case. However the answer to the latter branch of our dual proposition likewise constitutes an "open-sesame" to this Court's jurisdiction.
It has been brought to our attention that the opinion of the District Court in denying certiorari in this cause does not undertake to discuss these crucial points, but only states: "We * * * have carefully considered each and every point set out by the petitioner but fail to find that the judgment here sought to be reviewed by certiorari is not in accordance with the essential requirements of law and hence the petition for writ of certiorari is denied.
The respondent contends that this fact prevents this Court from predicating its jurisdiction on an asserted conflict which is not apparent from the face of the District Court's opinion. Regardless of the language which may be contained in prior opinions of this Court which might have been construed by members of the bench and bar as tending to support this argument, I would reject the notion that the opinion of a District Court must undertake to discuss specifically the point in issue before a direct conflict on that point can be created by its decision.
Article V, Section 4(2) of the Florida Constitution tersely states: "* * * the supreme court may review by certiorari any decision of a district court of appeal * * that is in direct conflict with a decision of another district court of appeal or of the supreme court on the same point of law * * *." (Italics supplied.) This Court has never decided, not even in Lake v. Lake, Fla. 1958, 103 So.2d 639, or in Seaboard Air Line Railroad Co. v. Branham, Fla. 1958, 104 So.2d 356, that it will look only and exclusively to an opinion of a district court to determine whether there is a conflict between that court's decision and a decision "of another district court of appeal or of the supreme court on the same point of law."[2] Nor should it do so. On the contrary this Court in the case of Fidelity Const. Co. v. Arthur J. Collins & Son, Inc., Fla. 1961, 130 So.2d 612, 613, made the following pronouncement:
"There exists a prima facie conflict between the two decisions upon the pivotal point of law and on closely related facts, and one which is in this instance nonetheless direct because of the failure of the court to write an opinion in the Shirey case [Shirey v. Thompson, Fla.App., 115 So.2d 203] to substantiate its decision therein." (Italics supplied.)
This Court has no power to change the word "decision," placed in our Constitution by the people, to "opinion" although it may consider the opinion, if there be one, and the judgment in determining the question *462 of conflict.[3] After all, an opinion is only an expression of reasons for the court's judgment or "decision."
The most we have ever stated upon the subject now under discussion is exemplified by our opinion in Lake v. Lake, supra, prepared by Mr. Justice Thomas from which I quote:
"It is another matter, however, for the Supreme Court to dig into a record to determine whether or not a per curiam affirmance by a district court of appeal conflicts with the interpretation the petitioner's counsel has placed upon former decisions in advancing his client's cause. By such procedure the safeguard intended by the pertinent provision would be distorted so that a suitor who had one day in the appellate court would have a second." (Italics supplied.)
* * * * * *
"There may be exceptions to the rule that this court will not go behind a judgment per curiam, consisting only of the word `affirmed' which does not reflect a decision that would interfere with settled principles of law, rendered by a district court of appeal, but the present case cannot be considered one." (Italics supplied.)
The fundamental and primary purpose of the provision set forth in Article V, Section 4 (quoted above) is to preserve harmony and uniformity in the case law of this State. In support of this pronouncement I cite again Lake v. Lake, supra:

"To remain stable, the law administered by the Supreme Court and the district courts of appeal must be harmonious and uniform. Were there not a central authority to keep it so it could happen that a district court of appeal would decide a given question of law one way and another district court of appeal another way, or one of them contrary to a former decision of the Supreme Court, through oversight or inadvertence, resulting in obvious confusion." (Italics supplied.)
We have not up to this good hour stated that under no circumstances would we ever assume jurisdiction of a petition for certiorari bottomed upon the theory of conflict even if there be no opinion of the district court. On the other hand, I think we have made evident the fact that we will not shirk the duty imposed upon us by our Constitution to maintain harmony and uniformity in the decisions of this State's appellate courts whenever those portions of a record before us (which are proper to be considered) disclose an antinomy which creates instability and confusion in the case law of the sovereign State of Florida. Lake v. Lake, supra; Fidelity Const. Co. v. Collins, et al., supra.
The District Court in the instant case, however, wrote an opinion and it, considered in the light of the "record proper" and without an examination or reevaluation of the evidence, indubitably "reflects" a decision that, if left standing, would disannul the constitutional guaranty of due process of law.[4]
"Due process of law" contemplates that upon appeal the appellant be accorded a review of his case on its own merits. It is crystal clear that independent questions of law as well as queries which involve both law and fact are presented in this case that were not raised in Gordon v. State.[5] Need more be said? I think not. On appeal the Circuit Judge in his opinion or order made pellucid the fact that he considered *463 the Gordon and the King cases to be "identical twins" and that he failed to give Petitioner herein a review upon the merits of his own case. In so doing the Circuit Judge committed not only an egregious error but one which is fundamental. Since such error was not corrected by the District Court but was affirmed there can be no doubt that this Court has jurisdiction of the petition for writ of certiorari now before it.
It is deemed unnecessary to track further the avenue of "conflict jurisdiction" by citing the many and consistent decisions of this Court wherein we have upheld the basic right of every litigant to "due process of law." The affirmance of the Petitioner's conviction by the Circuit Court and the denial of certiorari in the District Court of Appeal constituted an unquestionable departure from the essential requirements of the law. I conclude that this Court has jurisdiction herein. Consequently I will, as is our duty, consider all questions which were timely and properly presented just as though this case had come here initially for review.
In a well reasoned opinion prepared for this Court by Mr. Justice Drew in the case of Zirin v. Charles Pfizer & Co., Fla. 1961, 128 So.2d 594, 596, we said:
"[2-4] The second contention that we are limited in our review to the `question' is seen to be without merit by a simple analysis of the constitutional provision itself. In each of the three instances mentioned [italics supplied] where we may exercise our judgment to review by certiorari the subject of the sentence is `any decision of a district court * * *.' A decision encompasses the opinion and judgment and is generally regarded as determinative of the case, not merely a part of it. It is not the question of great public interest in a decision that we are concerned with but the decision that passes upon such a question. Needless steps in litigation should be avoided wherever possible and courts should always bear in mind the almost universal command of constitutions that justice should be administered without `sale, denial or delay.' Piecemeal determination of a cause by our appellate court should be avoided and when a case is properly lodged here there is no reason why it should not then be terminated here. [Italics supplied] In the Lissenden case [P.C. Lissenden Co., Inc. v. Board of County Comm'rs, Fla., 116 So.2d 632] we said, with respect to appeals and in discussing an analogous matter `[m]oreover, the efficient and speedy administration of justice is * * * promoted' by doing so."
See also Tyus v. Apalachicola Northern Railroad Company, Fla. 1961, 130 So.2d 580, wherein we stated that after finding a direct conflict and thus establishing the jurisdiction of this Court, "it becomes our duty and responsibility to consider the case on its merits and decide the points passed upon by the District Court which were raised by appropriate assignments of error as completely as though such case had come originally to this court on appeal." (Italics supplied.)
The instant case is similar to Zirin and Tyus and unlike the recent case of Martin v. Martin, Fla. 1962, 139 So.2d 406, rehearing denied June 25, 1962. In Martin v. Martin the appeal was from an interlocutory order in equity. The primary question presented to the District Court was one of jurisdiction of the Circuit Court in and for Dade County, Florida. Because the District Court decided that said Circuit Court lacked jurisdiction it did not pass upon another question raised on appeal. We refused upon petition for rehearing to invoke the rule laid down in the Zirin case. In the present case of King v. State the judgment from which appeal was taken to the Circuit Court is final. Moreover, one of the fundamental errors discussed herein was raised on appeal to the Circuit Court, while the other was committed by *464 that Court. Both of these basic errors were presented by Petitioner herein to the District Court of Appeal and by that Court permitted to remain in statu quo. The rule in Zirin is essentially applicable in a criminal case such as this wherein the asseverated errors offend against one of the most vital life lines of a government of free people  due process of law. Certain it is that such errors should be corrected without "* * * sale, denial or delay." (Italics supplied.)
Having thus expressed my views on the question of this Court's jurisdiction, I now direct my attention to the merits of the questions at issue.
At the threshold, I deem it appropriate to restate the observation we made in Diecidue v. State, Fla. 1961, 131 So.2d 7:
"The prohibition against comment to the jury about the failure of a defendant to testify [Section 918.09, F.S.A.] is a partial legislative implementation of the Fifth Amendment to the Constitution of the United States and the Declaration of Rights. If a defendant can be compelled to give testimony by holding him up to ridicule and scorn before a jury for failure to testify, he then is in fact coerced into giving testimony against himself in violation of the spirit, if not the letter, of his rights. The holding him up to ridicule simply becomes an alternative method to the rack and torture so prevalent in medieval times."
It appears from the "record proper" that the following remarks were made by the prosecutor at various points during the course of his final argument to the jury in the instant case:
"Now, from that point on, gentlemen, if you recall the testimony of Mr. Tillett  and remember this, gentlemen, there is not one scintilla, nor one little, teeny piece of evidence before you, gentlemen here to rebut one single word said by Boone Tillett before you * * *
* * * * * *
"And Boone Tillett testified, and, again, his testimony is uncontroverted, gentlemen, that, from looking at his watch, they had to have been there in that orange grove somewhere around 8:15 or 8:20, somewhere in that area. * * *
* * * * * *
"* * * Start back when Boone Tillet testified  and it is uncontradicted  that Senator King, the then Senator, started all this business because he, Boone Tillett, had indicated he was going to run for the position held by Harry King.
* * * * * *
"Now, gentlemen, there is no question but that the motive of these men is extremely important and what they were doing. It is uncontradicted that there was a $10,000 payoff. The other testimony of Mr. Tillett is again uncontradicted." (Italics supplied.)
It also appears from the "record proper" that the only persons who had knowledge of the facts testified to by Mr. Tillett and referred to by the prosecutor in his final argument, were Tillett and the Petitioner. For this reason, Petitioner asserts that the above-quoted comments by the prosecutor constituted comments on his failure to take the stand and testify in his own behalf. Such comments are forbidden under the provisions of Section 918.09, F.S.A.
A careful consideration of the prosecutor's remarks within the context of his final summation leads inevitably to the conclusion that such remarks constituted prejudicial error when measured by the provisions of § 918.09, F.S.A, and the prior decisions of this Court construing that Section.
Concededly, the prosecutor's remarks did not refer directly to the silence of the Petitioner. *465 However, since the witness Tillett and the Petitioner were the only two persons who had knowledge of the events referred to by the State's Attorney and were therefore the only witnesses who could testify concerning such events, the logical inference which the jury would draw from the prosecutor's remarks is that he was calling to their attention, at least indirectly or covertly, the fact that the Petitioner had not taken the stand. We have held that comments on a defendant's silence constitute reversible error if they are subject to an interpretation that they refer to the defendant's failure to take the witness stand, regardless of their susceptibility of a different construction. Trafficante v. State, Fla. 1957, 92 So.2d 811.
We have in the past recognized and I think we should continue to recognize the right of the prosecutor to refer to conflicts or absence of conflicts in the evidence, but these references may not be used as a covert means to draw the jury's attention to the defendant's silence. Gordon v. State, Fla. 1958, 104 So.2d 524; see also Gray v. State, 42 Fla. 174, 28 So. 53, and Clinton v. State, 56 Fla. 57, 47 So. 389. In the case of Way v. State, Fla. 1953, 67 So.2d 321, the County Solicitor made the following remarks during the course of his argument:
"`Mr. Cessna said he saw it was an outboard motor and that boat left the beach from in front of Charles Way's house and that evidence that he left the beach from in front of his house is unexplained. There is no denial of it. There is no conflict.' (Italics supplied.)"
Concerning these remarks, the Court stated:
"We have little doubt that the average juror would consider the latter statement made by the county solicitor as a direct reference to the fact that Charles Way did not take the witness stand in his own defense. Furthermore, we hold the view that such statement was at least a comment, covertly if not directly, upon the failure of Essie Way to become a witness in her own behalf."
Likewise, in Diecidue v. State, Fla. 1961, 131 So.2d 7, it was held that the trial judge's instruction, given in isolation, that possession "may be lawfully inferred by the surrounding circumstances, especially in the absence of contrary or exculpatory evidence" (italics supplied) called attention of the jurors to the defendant Diecidue's failure to testify. Such a charge was held to constitute fundamental error.
These authorities make it abundantly clear that even where the remarks are directed to the unexplained or uncontradicted nature of the evidence, they will demand reversal if they are susceptible of the inference that the defendant's silence is being brought to the jury's attention. In this case, as in Gordon v. State, 104 So.2d 524, and Trafficante v. State, Fla. 1957, 92 So.2d 811, only the witness and the Defendant could have testified with regard to the events in question. Therefore, the prosecutor's comments must have been directed to the Defendant's silence and not to his failure to submit the testimony of other witnesses. This fact was particularly pointed up to the jury by the following comment of the prosecutor appearing on page 1021 of the "record proper," in close proximity to one of the remarks concerning the uncontradicted nature of the witness Tillett's testimony:
"Only two men knew the scene  Boone Tillett, for one, and two, Harry King  the only two men who knew the scene."
In light of this remark, it cannot be said that the jury's attention was not directed to the Petitioner's silence. Factually no distinction can logically be made between this case and Gordon v. State, 104 So.2d 524. Mr. Justice Thornal in his opinion in *466 that case demonstrated the verity of this statement when he wrote:
"By its brief also the State attempts to defend the remark with the supposition that the prosecuting officer was not referring to the failure of the two defendants to take the witness stand but on the contrary was referring to the proposition that some other witnesses did not testify to what happened. We think that it is perfectly obvious from a casual examination of the quoted statement that the prosecutor could have been referring to no one other than the appellants Busbee and Arnold. Referring back to the statement it will be noted that he mentioned that "Busbee and Arnold were not at the scene because they couldn't have been." In the very next sentence he observed, "They didn't testify to what happened out there." The grammatical proximity of the two sentences and the interchange between the names of "Busbee and Arnold" and the pronoun "they" appear to us to point to the inescapable conclusion that reference was being made to the fact that these two defendants had failed to take the witness stand and testify as to actually what happened."
The law declared in Gordon is equally applicable herein and with reference to the instant suit Gordon is truly a "brown cow" case as is also Trafficante v. State, supra.
It may well be that the State's Attorney in this case had no intention of bringing this matter to the attention of the jury. Such innocence or inadvertence, however, does not alter the harmful or prejudicial character of the remarks. Rowe v. State, 87 Fla. 17, 98 So. 613; Trafficante v. State, Fla. 1957, 92 So.2d 811. The fact that the defendant made no objection to these comments of the prosecutor at the time they were made does not preclude the raising of the remarks as error on appeal, for neither rebuke nor retraction will entirely destroy the sinister influence of the remarks. Gordon v. State, Fla. 1958, 104 So.2d 524; Simmons v. State, 139 Fla. 645, 190 So. 756.
From its earliest days, this Court has jealously and scrupulously protected the right of the defendant in a criminal proceeding to remain silent. As an important incident to this right, we have consistently held that a prosecutor is prohibited from commenting on or bringing to the jury's attention, in any manner, the fact that the defendant did not testify in his own behalf.
Inasmuch as our jurisprudence has developed along these lines, we should not allow such a basic rule of law to be abrogated or nullified by a district court while this, the highest court of our State, stands by powerless to correct such an obvious deviation, merely because a district court has not seen fit to make such a conflict crystal clear upon the face of its opinion. A man's precious right to liberty should not be made to turn on the technical point of whether a district court has seen fit to render a written opinion in his case. To hold otherwise would be to reduce to a mockery the wise and longstanding decisions which have emanated through many decades from this Court in a continuous effort to preserve the fundamental rights of those accused of crime. It is this Court's solemn, inescapable, bounden, constitutional duty, in cases involving abridgment or denial of constitutional guarantees, to prevent the district courts from departing the path of established judicial precedent in the rendition of their decisions. The fulfillment of this obligation must not depend on such an uncertain event as the written word.
It appears in the instant case that the defendant expressly requested that requested that the trial judge not instruct the jury concerning the defendant's failure to take the stand. The respondent contends that this request by the Petitioner should preclude him from now raising this point before this Court. We have previously held that an instruction by the trial judge will not cure the harmful effect of comments made in violation of *467 Section 918.09, F.S.A.; Trafficante v. State, Fla. 1957, 92 So.2d 811; Rowe v. State, 87 Fla. 17, 98 So. 613. If such an instruction does not cure the error already committed, then the request by the defendant that the instruction be omitted could in no way operate as a waiver of the error. Since, as we have held, the instruction could not erase the harmful effect of the remarks, it would be futile to give such instruction and would indeed probably bring to the jury's attention even more clearly the failure of the defendant to take the stand.
Finally, we have held that comments on the defendant's silence by the prosecutor may not be considered "harmless error" under the provisions of Section 54.23 F.S.A.; Way v. State, Fla. 1953, 67 So.2d 321; Gordon v. State, 104 So.2d 524-541.
Upon consideration of the authorities herein cited, I am impelled to the conclusion that to allow the Petitioner's conviction to stand would create a direct and irreconcilable conflict with the cases hereinbefore cited.
I recognize that ordinarily the decision of a lower court will not be reversed where erroneous reasons are given for a correct result. That principle, however, is not applicable in the instant case. The Circuit Court's order of affirmance was not a "correct result." Moreover, the Petitioner was entitled, as a matter of right, to have his appeal considered on its own merits and the failure so to considered his appeal constitutes fundamental error.
The District Court, in the instant case, correctly stated that certiorari could not be used as a substitute for a second appeal. However, because of the language used by the Circuit Court in determining the Petitioner's appeal it is evident that he has never heretofore had the one appeal to which he is by law entitled.
This case points up the danger of the adoption of an "ironclad" rule to the effect that the Supreme Court of Florida will not consider a petition for certiorari directed to a district court of appeal when such court's opinion consists merely of the words "Per curiam. Affirmed" or language of like import such as "We * * * have carefully considered each and every point set out by the petitioner but fail to find that the judgment here sought to be reviewed by certiorari is not in accordance with the essential requirements of law and hence the petition for writ of certiorari is denied."
If such an inexorable rule were in existence this Court would be powerless to protect the constitutional right of the Petitioner or any person to due process of law. Moreover the rule of law promulgated by this Court, with regard to the construction of Section 918.09, F.S.A., as an implementation of Section 12, Florida Declaration of Rights and of the Fifth Amendment to the Federal Constitution, would be destroyed.
Summarizing, I would hold that this Court has jurisdiction in this case for the reason that fundamental error was committed at the trial level, another added by the Circuit Court, and both were erroneously affirmed by the District Court of Appeal. The second of these errors is fundamental because the Circuit Court failed to give Petitioner a review upon the merits of his own case, thereby denying to Petitioner due process of law. The first error is fundamental because this Court has pointedly said so. I quote from Rowe v. State, 87 Fla. 17, 98 So. 613, 618:
"We hold that calling the attention of the jury, by the prosecuting officer of the state, to the failure of the accused to testify in his own behalf, it matters not how adroitly he may attempt to evade the command of the statute, or how innocently it may be done, comes within the exception[6] and *468 deprives the defendant of the protection the statute was intended to secure, and of his constitutional right to a fair and impartial trial." (Italics supplied.)
I would reaffirm our previous pronouncement that the portentous effect of comment  directly, indirectly or covertly  by the prosecuting officer upon the failure of the defendant to take the stand in his own defense is incurable. Such comment must be considered in "all its stark significance." I quote with approval from the case of Quinn v. People, 123 Ill. 333, 15 N.E. 46, when the Illinois Court in discussing this subject said: "How much did it avail for the court to tell the jury that the remarks of Counsel were improper?" "* * * as well might one attempt to brush off with the hand a stain of ink from a piece of white linen." An instruction by a trial judge to the jurors to disregard and cast from their minds such a comment by the prosecutor would be as futile as was Lady Macbeth's mournful command[7] "Out, damned spot! Out, I say."
In the case of Gordon v. State, 104 So.2d 524-540, Mr. Justice Thornal speaking for this Court in a forceful and precedent plumbing opinion stated:
"[22, 23] Since Rowe v. State, 87 Fla. 17, 98 So. 613, this court has been aligned with the courts of other states which hold that when the prosecuting officer violates this rule, the trial becomes infected with error even though no exception is taken at the time and despite the fact that the trial judge might immediately rebuke the prosecutor for the violation. For the alignment of courts on this proposition see Pollard v. State, 201 Ind. 180, 166 N.E. 654, 84 A.L.R. 779. The courts which apply the rule in this fashion do so for the reason that when the prosecutor brings to the attention of the jury the failure of a defendant to testify, he naturally gives emphasis to the fact that the defendant could have testified if he had so desired and that by failing to do so he has something to hide. Immediately there is created in the mind of the average juror an ill-founded and prohibited prejudice which cannot be erased or eradicated either by apology or by judicial admonition. Barnes v. State, Fla. 1951, 58 So.2d 157. As so aptly described by Mr. Chief Justice Terrell in Carlile v. State, 129 Fla. 860, 176 So. 862, 864, such a prejudice `clings to the mind like a tattoo on the epidermis'."
The Supreme Court of South Dakota went so far as to hold expressly that the Legislature was not authorized to enact legislation which would "permit comment on the defendant's failure to testify in a criminal case." I quote from State v. Wolfe, 64 S.D. 178, 187, 188, 266 N.W. 116, 120:
"We are of the view that the Legislature was without authority, by legislative enactment, to permit comment on the defendant's failure to testify in a criminal case; and that so much of chapter 93 of the Laws of 1927 as purports to permit such comment is not binding upon the judiciary of the state.
"It may be that the right to comment upon the failure of the accused to exercise his right to become a witness in his own behalf should be conferred upon prosecutors as a matter of public policy; but if prosecutors are to have such right it must be conferred upon them by constitutional amendment. As stated by this court *469 in State ex rel. Poach v. Sly, [63 S.D. 162, 257 N.W. 113] supra: `But if such a change in the organic structure and underlying theory of our system of criminal law is to be made, it must be made by the people by constitutional amendment, and, until the Constitutions are changed, it cannot and must not be made by legislative enactment or judicial interpretation.'
"This court is committed to the rule that constitutional rights may be indirectly invaded as effectively as if directly transgressed. State ex rel. Poach v. Sly, supra.
* * * * * *
"The appellant's constitutional rights were invaded, for which a new trial must be granted." (Italics supplied.)
To find the fundamental errors in the instant case it was entirely unnecessary to review or even read the testimony. They are obvious from a cursory examination of the "record proper" in the light of our Declaration of Rights,[4] the Fifth Amendment to the Constitution of the United States and our construction of Section 918.09, F.S.A.
In order to ascertain the significance of a decision of a district court of appeal when such court's opinion and judgment contain nothing more than the words "Per Curiam. Affirmed.", or language of similar import, it is necessary in the fulfillment of its constitutional duty for this Court, at least, to look into the "record proper". This is no burdensome chore but if it were the constitutional mandate to this Court to maintain, as "a central authority," uniformity and harmony in "the law administered by the Supreme Court and the District Courts of Appeal" would, nevertheless, require this procedure. More certain it is that this Court, when the challenge is hurled that a defendant in a criminal case has not received a fair and impartial trial and has not been accorded a review of such trial upon the merits of his own case  denied due process , should examine the "record proper" to determine the truth or falsity of such alleged violation of individual rights guaranteed by the organic law. We should determine exactly what was decided by any of our appellate courts and not confine ourselves entirely to what it said it did or decided. The number of decisions of this Court, with which a decision violating or denying any person's constitutional rights would be in conflict, is legion.
Every reader who has borne with the author up to this point must suspect that the latter might deem it to be the duty of this Court to study carefully the entire record, if necessary, before denying a petition for a writ of certiorari predicated upon the charge by any citizen of this sovereign State that he has not had a fair and impartial trial or that otherwise his constitutional rights have been violated or denied. I unhesitatingly confirm such suspicion.
It appears to me to be pitiably incongruous to deny without thorough investigation a petition for a writ of certiorari in a case such as this wherein fundamental error is asserted before petitioner is incarcerated, yet after confinement hear and determine the same questions of basic error upon a petition for a writ of habeas corpus.[8]
Although I firmly believe that a judgment of reversal for a new trial should be entered by this Court I, nevertheless, bearing in mind the time-honored adage that "justice delayed is justice denied," concur in the per curiam opinion and judgment rendered in order that the apparent "deadlock" status of this case may be broken *470 and a proper final determination ultimately reached.
ROBERTS, C.J., and TERRELL, J., concur.
THORNAL, Justice (dissenting).
I respectfully but nonetheless with firm conviction dissent.
This case has been brought here by a petition for certiorari alleging a conflict between the decision of the District Court of Appeal, 134 So.2d 502, and prior decisions of this Court. A careful examination of the cited decision leads me to the inescapable conclusion that the District Court of Appeal followed rather than ignored precedent. I find nothing whatever inharmonious between the decision under review and prior decisions of this Court. I have the view that in taking jurisdiction of this case after it has been reviewed first by the Circuit Court in the exercise of its appellate jurisdiction and again by the District Court of Appeal, the majority generates a conflict with our own decisions delineating the narrow confines of our jurisdiction to review District Court of Appeal decisions on the "conflict theory." Ansin v. Thurston, Fla., 101 So.2d 808; Lake v. Lake, Fla., 103 So.2d 639; Florida Power and Light Co. v. Bell, Fla., 113 So.2d 697; Nielsen v. City of Sarasota, Fla., 117 So.2d 731.
As I analyze the opinion of the majority it practically directs the District Court of Appeal to direct the Circuit Court to reverse the judgment of the Polk County Criminal Court of Record and order a new trial. Without a clear-cut decision on the merits, the majority in effect passes on the merits by implementing its mandate with the pointed suggestion that the trial court failed to follow certain cited prior cases. If I could leap the jurisdiction hurdle, by the exercise of some judicial agility which I do not possess, I would even then disagree with the directive on the merits implicit in the mandate of the majority. I do not detect the presence of error in the trial proceeding which seems to have produced the concern in the minds of my esteemed colleagues who join in the majority opinion.
When I was accorded the privilege of preparing the initial appellate decision in this prolonged litigation, Gordon et al. v. State, Fla., 104 So.2d 524, weeks of study were devoted to a word by word analysis of the record and research of the law. The initial trial was permeated with error and this Court so held. With some grace therefore, upon the basis of my examination of the voluminous record of the second trial, which I have made despite my opinion regarding jurisdiction, I now have the view that the cause was fairly tried according to law and no prejudicial errors occurred.
I would discharge the writ of certiorari and thereby leave the decision of the District Court of Appeal undisturbed. In consequence of this conviction I respectfully dissent.
THOMAS and O'CONNELL, JJ., concur.
NOTES
[1] The expression "record proper" means the entire record of the case exclusive of the testimony or other evidence. I would reaffirm our oft repeated pronouncement that this Court will not examine or reevaluate the evidence in determining the question of jurisdiction predicated upon the theory of conflict.
[2] This statement is also applicable to the cases of Ansin v. Thurston, Fla., 101 So.2d 808; Florida Power and Light Co. v. Bell, Fla., 113 So.2d 697; Nielsen v. City of Sarasota, Fla., 117 So.2d 731.
[3] Seaboard Air Line Railroad Co. v. Branham, supra.
[4] Sections 4 and 12, Declaration of Rights.
[5] 119 So.2d 753  not 104 So.2d 524 wherein we held pointedly, as I would hold herein, that the defendants' constitutional rights were violated by the prosecutor's indirect reference to their failure to testify.
[6] The exception here mentioned is the one applicable to the general rule concerning the duty of the trial judge to instruct the jury to disregard improper remarks of counsel at the time of their utterance only upon timely objection to them, such exception being "* * * that, if the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence, in such event a new trial should be awarded regardless of the want of objection or exception." Akin v. State, 86 Fla. 564, 98 So. 609, opinion by Terrell, J.
[7] Macbeth, Act V, Scene 1, Line 38.
[8] Cash v. Culver, Fla., 122 So.2d 179-187 [14, 15] and cases therein cited.