287 So.2d 288 (1973)
Anthony Joseph DELANO, Appellant,
v.
DADE COUNTY et al., Appellees.
No. 43459.
Supreme Court of Florida.
December 20, 1973.
Shalle Stephen Fine, Miami, for appellant.
Stuart Simon, Dade Co. Atty., and Alan T. Dimond, Asst. Dade Co. Atty., for appellees.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Dade County. Appeal was originally taken from the Circuit Court to the District Court of Appeal, Third District, and the latter Court has transferred the cause to this Court, pursuant to Rule 2.1.a(5)(d), Florida Appellate Rules, 32 F.S.A. On April 18, 1973, this Court denied appellee's motion to transfer the cause to the Third District and suggestion of lack of jurisdiction. However, after argument of the cause on the merits, our careful reconsideration and analysis of the record and briefs and arguments of counsel sustains the view that the cause should be transferred to the District Court *289 of Appeal, Third District, for reasons which will be set forth below.
While appellant maintains that, "The Summary Judgment appealed[1] construed controlling provisions of the Florida and Federal Constitutions," this Court's recent decision in Ogle v. Pepin[2] prevents us from obtaining jurisdiction over this cause in the suggested manner. Nor is jurisdiction in this Court established by the fact that the trial court, in its order, inherently passed upon the validity of Sections 2-42(22) and 2-47 of the Code of Metropolitan Dade County. As to the latter, it has been urged that Florida Constitution Article VIII, Section 6(e), F.S.A. [incorporating the provisions of Florida Constitution Article VIII, Section 11 (1885)], by prohibiting the Legislature from enacting any special laws relating to Dade County, has, in effect, given all Dade County ordinances the dignity of special acts of the Legislature, thus allowing for the direct appeal to this Court of cases in which the trial court has passed upon the validity of such ordinances, pursuant to Florida Constitution Article V, Section 3(b)(1), F.S.A. We disagree with this theory of our jurisdiction. Article V, Section 3(b)(1), F.S.A., approved by the citizens of this State in the November, 1972, general election, and becoming effective January 1, 1973, provides:
"The Supreme Court shall hear appeals ... from orders of trial courts and decisions of district courts of appeal initially and directly passing on the validity of a state statute or a federal statute or treaty ... ." (Emphasis supplied.)
The foregoing provision does not, in our view, allow for a construction which would include the right of direct appeal to this Court of cases in which the trial court has passed upon the validity of Dade County, or any other "Home Rule" county, ordinances. In this instance, the rule of inclusio unius est exclusio alterius is particularly appropriate. If the citizens of this State had wanted to include Home Rule Ordinances for consideration by this Court on the same basis as state statutes, they could have said so. They did not.
Accordingly, this cause is herewith transferred to the District Court of Appeal, Third District.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
Ordinances adopted pursuant to the authority of home rule county charters which prior to ratification of such charters could only have been enacted as special acts of the Legislature, when their validity is passed upon by trial courts become subject matters for appeals to this Court. Merely because there has been a constitutional transfer of the power of the Legislature to home rule counties to adopt ordinances in lieu of special acts does not operate to transfer the appellate jurisdiction of this Court to review trial court decisions passing upon the validity of such ordinances to the District Courts. By their intrinsic nature such ordinances are laws regardless of the official body enacting them. The Constitution *290 in revised Article V, Section 4(b)(1) and (2) does not transfer to District Court such appellate jurisdiction.
Even though it may not have been clearly expressed, the rationale of such cases as Miami Shores Village v. Cowart (Fla. 1958), 108 So.2d 468; City of Miami Beach v. Cowart (Fla. 1959), 116 So.2d 432; Boyd v. County of Dade (Fla. 1960), 123 So.2d 323; and Dade County v. Kelly (Fla. 1958), 99 So.2d 856, is that appellate jurisdiction lies in this Court to hear appeals from trial court judgments passing upon the validity of Dade County ordinances.
Section 20(c)(1)(2) (the schedule) of revised Article V would appear to continue such appellate jurisdiction in the Supreme Court and not in the District Courts, even if it is not explicitly retained in Section 3(b)(1) of revised Article V.
This Court should not seek on technical bases to limit its appellate jurisdiction to decide constitutional issues. Historically, since the ratification of Article V in 1956 this Court has had the appellate duty to decide, for the sake of constitutional uniformity throughout the state and expeditious adjudication, such questions regardless of whether the same arose from construction of controlling provisions of the Constitution or from lower court decisions passing upon the validity of laws.
The Court now is in a strange period of technical withdrawal from its historic constitutional duties. In Ogle v. Pepin (Fla. 1973), 273 So.2d 391, it placed form over inherent substance in deciding whether to review lower court construction of controlling provisions of the Constitution. In this case the technical form of the enactment, i.e., home rule county ordinance or legislative special act, is to be the criterion; another withdrawal from substance.
The withdrawal from hearing appeals in cases involving the validity of ordinances taking the place of special acts and those involving the doctrine of inherency in the construction of controlling constitutional provisions, is of the same genre of cases where certiorari review is denied if transcript evidence must be considered in order to find conflict of decisions.
There was justification for the case of Foley v. Weaver Drugs, Inc. (Fla. 1965), 177 So.2d 221, at the time it was rendered because it was a reforming step away from the rigid rules then existing declining certiorari review. However, it did not go far enough. There is no logic in denying jurisdiction to hear a conflict of decisions case merely because the district court decision or the record proper doesn't disclose it. The Constitution in Article V speaks of our jurisdiction to review conflict of decisions, not just conflicts which appear from district court written opinions or the record proper of the case.
Unfortunately for justice, we have now adopted rules of jurisdiction that pay obeisance to form and artificiality rather than to substance. However, we sometimes have had the saving grace to wink at our professed jurisdictional rules. Read for examples: King v. State (Fla. 1962), 143 So.2d 458; Young Spring & Wire Corp. v. Smith (Fla. 1965), 176 So.2d 903; Gibson v. Maloney (Fla. 1970), 231 So.2d 823; Sinclair Refining Co. v. Butler (Fla. 1965), 190 So.2d 313; Fisher v. State (Fla. 1971), 248 So.2d 479.
In augmenting rules which further decline reviews because of the form of the decision or the nature of the record below, we delimit the role which Article V expects this Court to fulfill. This Court is supposed to be the chief evolutionary catalyst for reform and modernization of the law, not an evader of jurisdiction through rigid rules that lay their bases on form and artificiality and which preclude the bringing to this Court much of the live grist of new Florida cases where this Court could look to substance and merits to see if our jurisdiction lies.
If we refuse by arbitrary bureaucratic rules to take even a passing glance at a *291 case to see if from the recorded evidence its substance falls within our review jurisdiction, we cut off from threshold consideration  often indefinitely postponing  important questions crying for review. It is no wonder litigants so often resort to the Federal judiciary for relief.
The district courts in areas of this Court's review jurisdiction as well in those areas where this Court has announced governing precedents are admonished not to break new ground. We reserve that role to ourselves but often render it sterile because of rigid formal rules denying jurisdiction. See Hoffman v. Jones (Fla. 1973), 280 So.2d 431, 434. The result is the district courts are often in no position because of our precedents to advance modern principles of law and we in turn preclude exercise of jurisdiction to further them here by devitalizing rules.
As I pointed out some years ago in Gibson v. Maloney, supra, 231 So.2d text 834, 835, there is no great judicial labor involved in gleaning from the transcript evidence whether a jurisdictional issue falling within this Court's conflict certiorari review is involved. The attorneys for the litigants usually point out the jurisdictional issue in their petitions and briefs without our laboring in excess to find it in the transcript. Moreover, we now have been provided sufficient research staff to aid us in the initial determination of whether jurisdiction lies here.
This Court, the supreme court of the state, should unshackle itself  turn away from its technical stance, its rigid exclusionary rules of jurisdiction and determine on the merits whether initial appeal or certiorari review lies here under the Constitution on the substance of each particular case.
I do not believe this Court should announce general rules for wholesale withdrawal of its duty to decide constitutional and conflict issues. As I said in dissenting in Ogle v. Pepin, this Court should be loath to shirk its constitutional responsibility by passing on to other courts its appellate or review responsibilities from any personal considerations due to the extent of judicial labor entailed. To do so results in delays and confusion for the people in their having the benefit of definitive and final settling adjudications of the law at the state's highest judicial level  a salutary expediting reform which the people were assured Article V would provide.
Article V in Section 2(a) has been revised to simplify procedural review. Misconceived or improperly sought remedies are not to be the bases for dismissal. In line with this modernization policy, road blocks of form and artificiality should not be placed in our rules to frustrate rights to petition or appeal for review. See my dissent in State ex rel. Carter v. Wigginton (Fla. 1969), 221 So.2d 409.
NOTES
[1] Said Judgment reads, in pertinent part:

"It is therefore
"ORDERED and ADJUDGED that
"1. Defendant's Motion for Summary Judgment be and the same is hereby granted;
"2. Plaintiff's Motion for Summary Judgment be and the same is hereby denied;
"3. Defendant Dade County has stipulated that in the event this Order is reversed on appeal, and thereby Plaintiff is held entitled to reinstatement, Plaintiff's back pay is presently in the amount of $45,962.94 and is entitled to a longevity bonus in the amount of $250.00.
"4. Final Summary Judgment is entered hereby in favor of Defendant Dade County and each party shall bear its own costs."
[2] 273 So.2d 391 (Fla. 1973).